[No. S103689. June 24, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
SCOTT ALLEN JONES, Defendant and Appellant.

## Counsel

Gregory Marshall, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Jo Graves, Assistant Attorney General, J. Robert Jibson and Janine R. Busch, Deputy Attorneys General, for Defendant and Respondent.

## Opinion

**KENNARD, J.—** ▮  In this murder case, the trial court removed defendant's appointed attorney because the attorney's previous representation of a man whom the defense suspected of committing the murder created a potential conflict of interest; the removal occurred notwithstanding defendant's offer to waive the potential conflict. Defendant contends the removal violated his right to counsel under the federal and the state Constitutions. We disagree.

## I

In February 1992, Boyd Wagner, a 92-year-old man, was found dead in his home in Cottonwood, a small community in Shasta County. Two years later,

in March 1994, defendant, who lived near Wagner, was charged with murdering him. The Shasta County Municipal Court appointed Shasta County Public Defender Frank O'Connor to represent defendant. O'Connor assigned defendant's case to Deputy Public Defender Gary Roberts.

For the next two years, Roberts represented defendant. At some point, apparently in early 1995, O'Connor ceased to be the public defender; but Roberts, by then an associate in O'Connor's law firm, continued to serve as defendant's counsel.[1]

Roberts filed numerous motions and engaged in extensive pretrial litigation, most of which pertained to the admissibility of certain DNA evidence. The DNA was extracted from a pair of bloodstained pants found in defendant's bedroom. Tests showed that the DNA of the blood on the pants matched that of murder victim Wagner.

In a series of in camera hearings beginning in February 1996, Attorney Roberts told the trial court he was investigating the possibility that one Michael Wert had committed the murder, which might give rise to a conflict of interest because O'Connor's law office, where Roberts was an associate, had previously represented Wert. Defendant and Wert had an acrimonious relationship that dated back to 1989, when defendant and his wife separated and defendant's wife moved in with Wert. In late 1989 and early 1990 there were violent incidents involving the two: Wert assaulted defendant's wife, defendant assaulted Wert, and Wert and his brother William assaulted defendant. The defense also had information that Wert had been involved in a murder in Los Angeles and had been living under an assumed name as part of a witness protection program. In February 1992, the month Wagner was killed, Wert was arrested on felony drug charges. He was released on bail a few days before the killing. The defense, however, had no evidence linking Wert to Wagner's death. It regarded him as a possible suspect for these reasons: he was a reputed drug dealer who had a history of violence and might have needed money to pay his bail bondsman; he was living in

---

[1] When O'Connor was the public defender he, rather than Roberts, was the attorney of record. (See *People v. Sapp* (2003) 31 Cal.4th 240, 256 [2 Cal.Rptr.3d 554, 73 P.3d 433] [" 'In cases handled by the public defender's office, it is the officeholder who is the attorney of record.' "].) After O'Connor ceased to be the public defender, it is unclear whether O'Connor or Roberts was defendant's attorney of record, but most likely O'Connor was, because motions filed on defendant's behalf listed the "Law Office of Frank J. O'Connor" as defendant's attorney. Attorney Roberts, however, made all the appearances and signed all the motions filed on defendant's behalf.

For simplicity and clarity, we refer to Roberts as defendant's lawyer, even though O'Connor technically may have been the attorney of record, and we use the term "O'Connor's law office" to refer both to the office O'Connor occupied as public defender and to the law firm he headed after he no longer was the public defender.

Cottonwood, where the murder of Wagner occurred; and he had a motive to "frame" defendant for the murder because of their troubled relationship.

Attorney Roberts's possible conflict of interest pertaining to Wert resulted primarily from two matters. First, O'Connor's law office, in which Roberts was an associate, had represented Wert in the 1992 drug charges mentioned above. Second, in 1994 Roberts himself represented Wert on a charge that Wert had violated probation and had escaped from electronic home confinement. Roberts negotiated a plea bargain under which Wert admitted the probation violation in exchange for dismissal of the escape charge. Roberts had also represented Wert's brother William on a bad check charge. But so far as Roberts knew, neither he nor anyone in O'Connor's law office had received any communication from Wert that could be useful in defendant's case.

As the trial court became aware of these facts through Roberts, it held a series of in camera hearings to discuss the situation. At the first hearing, on February 29, 1996, the court appointed Attorney John Webster to discuss with defendant his right to conflict-free counsel. Later that day, the court met with defendant as well as Attorneys Webster and Roberts. Webster told the court he had fully advised defendant about all possible conflicts of interest, to the extent he was aware of them, and that defendant nevertheless wanted to be represented by Roberts. Defendant told the court he would waive any possible conflict of interest. Roberts said he saw no reason why he could not represent defendant, but he raised the possibility that a conflict could arise if the defense turned up evidence linking Wert to the murder. The court asked Roberts if his representation of defendant would be adversely affected by the possibility that Wert might report him to the State Bar or sue him. Roberts replied he'd "like to think about that."

At the second in camera hearing, on March 14, 1996, Roberts mentioned that he had consulted two attorneys knowledgeable about conflicts of interest, and that both saw no conflict in his continued representation of defendant. Roberts said that he had thought about the possibility of Wert's suing him but concluded that it would not interfere with his ability to adequately represent defendant. He explained, "that's why we have malpractice insurance," adding that if he was adequately represented in any such lawsuit Wert would have no chance of prevailing. And Roberts expressed no concern about the possibility that Wert would report him to the State Bar, explaining: "The State Bar would only be concerned about it if there was a conflict. And I'm satisfied . . . that there is no conflict." He noted that if he were taken off defendant's case, it would be "emotionally devastating" to defendant, and that it would "require a major delay in proceedings while another attorney got up to speed."

At the third in camera hearing, held on June 24, 1996, Roberts said it made him "very uneasy that I'm with this office that has this close relationship with the representation of Michael Wert" and that the possibility of a conflict was "very troublesome." He acknowledged that "if I stay with the case, I'm potentially creating problems." He told the court that another client in a criminal case had filed a complaint against him with the State Bar, and even though the bar had absolved him of wrongdoing he had to spend two days of work responding to the complaint. The court asked Roberts if going through that experience could cause him "to flinch in this case." Roberts said it might. Asked for his response, defendant said he wanted Roberts to continue representing him.

Two days after that hearing, the trial court announced that it had decided to remove Roberts as defendant's counsel because of the potential conflict. Roberts asked for a fourth in camera hearing. There, he told the court Wert was unlikely to testify as a witness at trial. The court explained that the possibility of Wert's testifying was only one of the factors that led to his decision to remove Roberts. It explained: "[I]f [defendant] believes there is any likelihood that Mr. Wert is the actual perpetrator, then he has the right to have an attorney that is totally unhindered in pursuing that possibility from the very get go, including investigation. And one that would not have any psychological pressure on him to [be] hesitant, to fully prosecute any actions against your former client. [¶] And I think that puts you in a very unfair position from your perspective . . . ." The court added it felt "compelled . . . by the law" to discharge Roberts.

After consulting with defendant, Attorney Roberts told the trial court that defendant did not want to "pursue any issue involving Michael Wert," but that in Roberts's view defendant should consult with independent counsel before making that choice. Defendant then said, "I don't need no lawyer to tell me. I don't want to pursue Michael Wert as a suspect." That, the court replied, this was to be decided by defendant's lawyer. It refused to reconsider its ruling removing Roberts, and it appointed Attorney Russell Swartz to represent defendant.

Defendant's case went to trial in January 1998, a year and a half after the court's removal of Attorney Roberts. Defendant, by then represented by Swartz, presented no evidence pertaining to Wert. The jury convicted defendant of first degree murder.

The Court of Appeal's three-member panel affirmed the conviction, but could not agree on a rationale for its result. Justice Davis's lead opinion concluded that the trial court's removal of Attorney Roberts was erroneous under state law. It reasoned, however, that because defendant had not

challenged the removal by pretrial writ, and instead had waited to raise the issue on appeal, he could obtain reversal of his murder conviction only on a showing of prejudice, which he had not established. According to the lead opinion, the record did not show that the trial court's discharge of defendant's appointed counsel prejudiced defendant. Justice Raye found the trial court's removal of Roberts to be a violation of both state law and the federal Constitution. Nevertheless, he concluded that improper removal of appointed · counsel does not require reversal absent a showing of prejudice, which defendant had not made. Justice Callahan found no error whatsoever, reasoning that the trial court had properly exercised its discretion in removing Roberts as defendant's counsel.

## II

■ "A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 [86 Cal.Rptr.2d 816, 980 P.2d 371] (*SpeeDee Oil*).) Inherent in the question whether a trial court may disqualify a criminal defense attorney over the defendant's objection is the conflict between the defendant's preference to be represented by that attorney and the court's interest in "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." (*Wheat v. United States* (1988) 486 U.S. 153, 160 [100 L.Ed.2d 140, 108 S.Ct. 1692] (*Wheat*); see also *SpeeDee Oil, supra,* at pp. 1144–1147.)

## III

Defendant contends the trial court's removal of his appointed counsel because of a potential conflict of interest, notwithstanding defendant's desire to waive that conflict, violated his right to counsel under the Sixth and Fourteenth Amendments to the federal Constitution. We disagree.

In *Wheat, supra,* 486 U.S. 153, the United States Supreme Court discussed the extent to which the federal Constitution limits a trial court's power to remove an attorney for a conflict of interest. In that case, the defendant was charged with conspiring to sell illegal drugs. Attorney Eugene Iredale represented two other alleged participants in the conspiracy: One (Bravo) eventually pled guilty to participating in the conspiracy; the other (Gomez-Barajas) was tried and acquitted, but he had other unrelated charges pending. When the defendant sought to be represented by Iredale, the prosecution objected. It

contended that the defendant might be called as a witness in a trial on Gomez-Barajas's remaining charges, and that Bravo might be called as a witness if the defendant's case went to trial. In either event, the prosecution argued, Attorney Iredale had a conflict of interest. The defendant insisted that he and Bravo were unlikely to be witnesses, and he offered to waive any possible conflict of interest. The trial court nevertheless ruled that Iredale could not represent him.

The high court in *Wheat* upheld the trial court's refusal to allow Iredale to represent the defendant. The court explained that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." (*Wheat, supra*, 486 U.S. at p. 159.) When a defense attorney has a potential conflict of interest, the court noted, a trial court is placed in a difficult dilemma: "If a . . . court agrees to the . . . representation, and the advocacy of counsel is thereafter impaired as a result, the defendant may well claim that he did not receive effective assistance. [Citation.] On the other hand, a . . . court's refusal to accede to the . . . representation may result in a challenge such as petitioner's in this case. Nor does a waiver by the defendant necessarily solve the problem, for we note, without passing judgment on, the apparent willingness of the Courts of Appeals to entertain ineffective-assistance claims from defendants who have specifically waived the right to conflict-free counsel." (*Id.* at pp. 161–162.)

Moreover, the high court stated, a trial court's decision whether to allow a defendant to waive a conflict of interest cannot be made after trial, but instead occurs "in the murkier pretrial context when relationships between parties are seen through a glass, darkly." (*Wheat, supra*, 486 U.S. at p. 162.) The court went on to say that "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict" and are "even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics." (*Id.* at pp. 162–163.)

Thus, the high court concluded, trial courts "must be allowed *substantial latitude* in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." (*Wheat, supra*, 486 U.S. at p. 163, italics added.)

Here that potential existed, at least with regard to Wert. At the time of Wagner's murder, Roberts was an attorney working in O'Connor's law office,

which was representing Wert on an unrelated matter. Wert may have given the office information pertaining to his whereabouts at the time of the murder and his financial status, matters that could have become relevant if the defense later obtained information linking Wert to the murder. Although the likelihood that Wert had revealed such information may not have been great, it was enough to create a serious potential conflict of interest for Defense Attorney Roberts. Indeed, at the last in camera hearing before his removal as defendant's attorney, Roberts told the trial court that the possibility of a conflict was "very troublesome" and had the potential of "creating problems." He also said his fear of being sued by Wert might affect his representation of defendant. Under *Wheat, supra,* 486 U.S. at page 163, the trial court had "substantial latitude" to eliminate the potential conflict by discharging Roberts as defendant's appointed attorney. Consequently, that discharge did not violate defendant's right to counsel under the federal Constitution.

## IV

Defendant contends that even if the trial court did not violate the federal Constitution when it discharged appointed Attorney Roberts, it nonetheless violated the state Constitution. We begin our analysis with a brief review of the four pertinent decisions of this court.

In *People v. Crovedi* (1966) 65 Cal.2d 199 [53 Cal.Rptr. 284, 417 P.2d 868] (*Crovedi*), we held that the trial court committed reversible error when it denied the defendant a seven-week continuance to allow his retained counsel to recover from a midtrial heart attack and insisted that counsel's associate represent defendant for the rest of the trial. We explained that although "a defendant has no *absolute* right to be represented by a particular attorney, still the courts should make all reasonable efforts to ensure that a defendant financially able to retain an attorney of his own choosing can be represented by that attorney." (*Id.* at p. 207, fn. omitted.) We continued, "an accused must be afforded reasonable opportunity for representation by retained counsel of his own choice *whether or not a conflict of interest is shown.*" (*Ibid.,* italics added.)

Thereafter, in *Smith v. Superior Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65] (*Smith*), we addressed the issue of discharging a court-appointed attorney. In that case, a judge who had a personality conflict with the defendant's appointed attorney discharged the attorney on the basis of incompetence. We ordered reinstatement of the attorney. Quoting *Crovedi, supra,* 65 Cal.2d at page 206, we said the threat to remove counsel for alleged incompetence is " 'an unreasonable interference with the individual's desire to defend himself in whatever manner he deems best. . . .' " (*Smith,*

*supra*, 68 Cal.2d at p. 561.) We recognized that the defendant's attorney, unlike defense counsel in *Crovedi*, was appointed rather than retained, but we considered the distinction inconsequential: "[O]nce counsel is appointed to represent an indigent defendant, whether it be the public defender or a volunteer private attorney, the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained." (*Smith, supra*, 68 Cal.2d at p. 562.)

We expressed a similar view in *Cannon v. Commission on Judicial Qualifications* (1975) 14 Cal.3d 678 [122 Cal.Rptr. 778, 537 P.2d 898] (*Cannon*). There, we removed a judge from office for, among other things, " 'unlawful interference . . . with the attorney-client relationship' " (*id.* at p. 698) by recusing deputy public defenders whom she had held in contempt. In rejecting the judge's claim that she had inherent power to remove the attorneys, we said that "*Smith*[, *supra*, 68 Cal.2d 547,] makes it abundantly clear that the involuntary removal of any attorney is a severe limitation on a defendant's right to counsel and may be justified, if at all, only in the most flagrant circumstances of attorney misconduct or incompetence when all other judicial controls have failed." (*Cannon, supra*, 14 Cal.3d at p. 697; see also *People v. Daniels* (1991) 52 Cal.3d 815, 846 [277 Cal.Rptr. 122, 802 P.2d 906] [quoting *Cannon* with approval].)

Thereafter, we applied the reasoning of those three decisions (*Cannon, supra*, 14 Cal.3d 678; *Smith, supra*, 68 Cal.2d 547; and *Crovedi, supra*, 65 Cal.2d 199) in *Maxwell v. Superior Court* (1982) 30 Cal.3d 606 [180 Cal.Rptr. 177, 639 P.2d 248] (*Maxwell*), where the defendant was willing to waive a potential conflict of interest between himself and his attorneys. Charged with 10 counts of capital murder, the indigent defendant was able to retain private attorneys by signing a contract assigning to them all rights to his life story. Finding that the contract created a possible conflict of interest, the trial court discharged the attorneys. We ordered their reinstatement. We explained: "[T]he mere possibility of a conflict does not warrant pretrial removal of competent counsel in a criminal case over defendant's informed objection. When the possibility of significant conflict has been brought to the court's attention and the danger of proceeding with chosen counsel has been disclosed generally to defendant, *he may insist on retaining his attorneys if he waives the conflict knowingly and intelligently for purposes of the criminal trial.*" (*Maxwell, supra*, 30 Cal.3d at p. 619, italics added, fns. omitted.)

It is difficult to determine the basis underlying the holdings in the quartet of cases discussed above. (*Maxwell, supra*, 30 Cal.3d 606; *Cannon, supra*, 14 Cal.3d 678; *Smith, supra*, 68 Cal.2d 547; and *Crovedi, supra*, 65 Cal.2d 199.) It is far from clear whether they are grounded on the state Constitution; or on the federal Constitution (in which event they are superseded by the high

court's decision in *Wheat, supra,* 486 U.S. 153, to the extent they are inconsistent with that decision); or on neither Constitution, instead simply delineating the limits of a trial court's discretion to remove an attorney because of a possible conflict of interest.[2] Citing these four decisions, defendant here argues that the trial court's removal of his attorney violated article I, section 15 of the California Constitution, which gives a criminal defendant "the right . . . to have the assistance of counsel . . . ." As we shall explain, the removal did not violate defendant's right to counsel under the California Constitution.

■ The California Constitution gives a criminal defendant the right to an attorney who must competently represent the defendant. But, as we have often pointed out, the state Constitution does not give an indigent defendant the right to *select* a court-appointed attorney. (*Harris v. Superior Court* (1977) 19 Cal.3d 786, 795–796 [140 Cal.Rptr. 318, 567 P.2d 750]; *Drumgo v. Superior Court* (1973) 8 Cal.3d 930, 934 [106 Cal.Rptr. 631, 506 P.2d 1007]; *People v. Hughes* (1961) 57 Cal.2d 89, 98–99 [17 Cal.Rptr. 617, 367 P.2d 33]; see generally *People v. Courts* (1985) 37 Cal.3d 784, 796, fn. 11 [210 Cal.Rptr. 193, 693 P.2d 778].) ■ True, in certain circumstances a trial court abuses its discretion if it refuses to honor an indigent defendant's request for appointment of an attorney with whom the defendant has a long-standing relationship (see *Harris, supra,* 19 Cal.3d 786 [trial court abused its discretion in refusing to appoint attorneys who had represented the defendants in related criminal proceedings and had developed a close working relationship with them]), but this abuse of discretion does not ordinarily violate the defendant's right to counsel.

■ The *removal* of an indigent defendant's appointed counsel, which occurred here, poses a greater potential threat to the defendant's constitutional right to counsel than does the refusal to *appoint* an attorney requested by the defendant, because the removal interferes with an attorney-client relationship that has already been established. But when, as here, a trial court removes a defense attorney because of a potential conflict of interest, the court is seeking to protect the defendant's right to competent counsel. In such circumstances, there is no violation of the right to counsel guaranteed by

---

[2] As we noted in *SpeeDee Oil, supra,* 20 Cal.4th at page 1145, a trial court's power to disqualify an attorney derives from Code of Civil Procedure section 128, subdivision (a)(5), which authorizes a trial court to "control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it . . . ." Under this section, which applies in criminal cases (*Comden v. Superior Court* (1978) 20 Cal.3d 906, 916, fn. 4 [145 Cal.Rptr. 9, 576 P.2d 971]; *People v. Superior Court (Greer)* (1977) 19 Cal.3d 255, 261, fn. 4 [137 Cal.Rptr. 476, 561 P.2d 1164]), "a trial court's decision on a disqualification motion is reviewed for abuse of discretion" (*SpeeDee Oil, supra,* at p. 1143). Here, defendant does not contend that the trial court violated this section when it removed attorney Roberts, and we do not address the issue.

article I, section 15 of the state Constitution, notwithstanding the defendant's willingness to waive the potential conflict. (See generally *People v. McDermott* (2002) 28 Cal.4th 946, 990 [123 Cal.Rptr.2d 654, 51 P.3d 874] [stating in passing that "a trial court may refuse to accept . . . a waiver" of the right to be represented by conflict-free counsel].)[3]

DISPOSITION

We affirm the judgment of the Court of Appeal.

George, C. J., Baxter, J., Chin, J., and Brown, J., concurred.

**WERDEGAR, J.**—I concur in the majority's result. I write separately to explain my differences with the majority in its analysis of a defendant's federal and state constitutional rights to counsel in the context of a counsel's potential conflict of interest.

When defendant was charged in 1994 with murdering victim Boyd Wagner, the superior court appointed Attorney Gary Roberts to represent him. Almost two years later, after Roberts had "filed numerous motions and engaged in extensive pretrial litigation" (maj. opn., *ante*, at p. 237), a potential conflict arose due to Roberts's previous representation of Michael Wert, a felon who had been released from jail on bail only days before Wagner's murder. Antagonism existed between Wert and defendant because Wert had previously had a romantic relationship with defendant's wife, causing defendant allegedly to assault Wert. Other than this possible motive to frame defendant and the possibility Wert may have visited a drug dealer who lived on the same street as the victim, neither physical evidence nor any eyewitnesses connected Wert to the murder. The trial court held a series of hearings to inquire into the potential conflict and appointed independent counsel to advise defendant. After being apprised of the pertinent facts, defendant chose to waive any possible conflict of interest arising from Roberts's prior representation of Wert. That defendant's waiver was a knowing and voluntary one is not disputed.

Attorney Roberts's position on the potential conflict was less consistent. At one point, he asserted he was "satisfied" that no conflict existed. He agreed

---

[3] In *Alcocer v. Superior Court* (1988) 206 Cal.App.3d 951, 957 [254 Cal.Rptr. 72], the Court of Appeal stated: "A court abridges a defendant's right to counsel when it removes *retained* defense counsel in the face of a defendant's willingness to make an informed and intelligent waiver of his right to be represented by conflict-free counsel." (Italics added.) We need not decide whether the state Constitution permits a defendant to insist on being represented by a *retained* attorney who has a potential conflict of interest, for here defendant's attorney was appointed by the court, not privately retained by defendant.

with the trial court that he would "not feel inhibited to any degree in pursuing the defense of [defendant] because of any concerns . . . regarding [his] prior representation of Mr. Wert." At a later hearing, Roberts appeared less confident. He stated he was "very uneasy" with the situation and answered in the affirmative when the trial court asked whether his prior representation of Wert might cause him to "flinch in this case." Despite Roberts's earlier assertion that his removal would be "emotionally devastating" to defendant and would "require a major delay in proceedings while another attorney got up to speed," the trial court removed Roberts as defendant's attorney. Defendant, represented by a different attorney, was eventually convicted of Wagner's murder.

The majority affirms the conviction, finding Roberts's removal did not violate defendant's right to counsel under either the federal or the state Constitution. Although I agree, I believe the majority misconstrues the scope of defendant's right to counsel of his choice under both the federal and state Constitutions.

# I

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall . . . have the assistance of counsel," and this basic guarantee applies to the states, requiring the appointment of counsel for all serious crimes for those who cannot afford to hire an attorney. (*Gideon v. Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792].) The Sixth Amendment right to counsel includes "the right to the effective assistance of counsel" (*McMann v. Richardson* (1970) 397 U.S. 759, 771, fn. 14 [25 L.Ed.2d 763, 90 S.Ct. 1441]; see *Strickland v. Washington* (1984) 466 U.S. 668, 686 [80 L.Ed.2d 674, 104 S.Ct. 2052]), as well as the "correlative right to representation that is free from conflicts of interest" (*Wood v. Georgia* (1981) 450 U.S. 261, 271 [67 L.Ed.2d 220, 101 S.Ct. 1097]).

The "right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment." (*Wheat v. United States* (1988) 486 U.S. 153, 159 [100 L.Ed.2d 140, 108 S.Ct. 1692] (*Wheat*).) Indeed, the *Wheat* court observed that the Sixth Amendment creates a "presumption in favor of [defendant's] counsel of choice." (*Wheat, supra,* at p. 164.) In previous opinions, the high court has explained that a criminal defendant's "right to be heard through his own counsel was unqualified" (*Chandler v. Fretag* (1954) 348 U.S. 3, 9 [99 L.Ed. 4, 75 S.Ct. 1]) and "[i]t is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice" (*Powell v. Alabama* (1932) 287 U.S. 45, 53 [77 L.Ed. 158, 53 S.Ct. 55]). Although an

indigent accused is not initially entitled to choose his or her own counsel at state expense (*Drumgo v. Superior Court* (1973) 8 Cal.3d 930, 934 [106 Cal.Rptr. 631, 506 P.2d 1007] ["We have repeatedly held that constitutional and statutory guarantees are not violated by the appointment of an attorney other than the one requested by defendant"]; see also *Morris v. Slappy* (1983) 461 U.S. 1, 23, fn. 5 [75 L.Ed.2d 610, 103 S.Ct. 1610] (conc. opn. of Brennan, J.)), once the defendant establishes an attorney-client relationship with his or her attorney, the law recognizes a protectable interest in that relationship. (See *Harris v. Superior Court* (1977) 19 Cal.3d 786 [140 Cal.Rptr. 318, 567 P.2d 750].) "Further, the constitutional guaranty [of the effective assistance of counsel] protects the defendant who retains his own counsel to the same degree and in the same manner as it protects the defendant for whom counsel is appointed, and recognizes no distinction between the two. (*Cuyler* v. *Sullivan* [(1980)] 446 U.S. [335,] 344–345 [64 L.Ed.2d 333, 344, 100 S.Ct. 1708].)" (*People v. Bonin* (1989) 47 Cal.3d 808, 834 [254 Cal.Rptr. 298, 765 P.2d 460].)

When a criminal defendant is willing to waive his lawyer's conflict of interest but, as here, that conflict threatens to undermine the fairness of the trial itself, trial courts are faced with a dilemma. The majority correctly identifies *Wheat, supra,* 486 U.S. 153, as relevant to the determination whether the trial court's decision to remove Roberts violated defendant's Sixth Amendment rights. I disagree, however, with the majority's treatment of *Wheat* as fully dispositive of the Sixth Amendment issue; in my view, the majority reads too much into the high court's decision in *Wheat,* a case that is distinguishable on its facts.

*Wheat* concerned an attorney named Iredale, who represented two members of a criminal conspiracy to smuggle illegal drugs. Just one day before the start of his trial, Wheat, purportedly a third member of the same conspiracy, sought to substitute Iredale in lieu of his own attorney. Because there was a manifest conflict between the three defendants due to their expected defenses (and the decision of one to plead guilty), Wheat offered to waive any conflict of interest related to Iredale's representation of the other coconspirators. The trial court denied permission to substitute counsel.

In affirming the trial court's decision, the high court in *Wheat* explained that although "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." (*Wheat, supra,* 486 U.S. at p. 159.) Noting the difficult situation faced by district courts when confronted with a defendant willing to waive a conflict with his lawyer, the high court concluded district

courts "must be allowed *substantial latitude* in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses. *In the circumstances of this case, with the motion for substitution of counsel made so close to the time of trial*[,] the District Court relied on instinct and judgment based on experience in making its decision. We do not think it can be said that the court exceeded the *broad latitude* which must be accorded it in making this decision." (*Id.* at p. 163, italics added.)

Because the defendant in *Wheat* sought to hire Iredale on the eve of trial and up to that point had had no professional relationship with him, *Wheat*'s holding must be viewed with these facts in mind. The *Wheat* majority concluded no federal constitutional right exists *to hire* one's choice of counsel over the trial court's determination that counsel is conflicted, even if the defendant is willing to waive the conflict. Moreover, after *Wheat*, the client cannot use his Sixth Amendment right to counsel as a sword to force the trial court, *on the eve of trial*, to approve the client's desire to hire conflicted counsel.

Neither of these two critical features of *Wheat* is present in this case. First, defendant here had *an existing attorney-client relationship* with Attorney Roberts. At the time of his removal, Roberts had represented defendant for almost two years and had conducted vigorous pretrial litigation. Even if a trial court has discretion, after *Wheat*, to reject a proffered knowing and intelligent waiver of the right *to hire* unconflicted counsel, *Wheat* does not address whether that rule applies where, as here, a defendant has an already established attorney-client relationship with his lawyer. The distinction is important; as we said in *Maxwell v. Superior Court* (1982) 30 Cal.3d 606, 613 [180 Cal.Rptr. 177, 639 P.2d 248], "[E]ffective assistance is linked closely to representation by counsel of choice. When clients and lawyers lack rapport and mutual confidence the quality of representation may be so undermined as to render it an empty formality." By terminating the existing attorney-client relationship over defendant's objection, the trial court's decision here risked destroying the trust and confidence that had developed between Roberts and defendant over almost two years.

Second, the question whether Roberts could continue to represent defendant despite the potential conflict of interest arose well before trial. The trial court inquired into the pertinent facts over several pretrial hearings. Unlike *Wheat*, this case does not involve a request to substitute attorneys on the eve of trial, a fact found important by the *Wheat* court. (*Wheat, supra,* 486 U.S. at p. 163.) Because the facts of *Wheat* are not at all similar to those of the instant case, the majority errs to the extent it treats *Wheat* as controlling.

I nevertheless agree the trial court did not violate defendant's rights under the Sixth Amendment to the federal Constitution. As noted, *ante*, the Sixth Amendment creates a "presumption in favor of [defendant's] counsel of choice" (*Wheat, supra*, 486 U.S. at p. 164), but that presumption is rebuttable. Although defendant was willing to waive Roberts's potential conflict stemming from Roberts's previous representation of Michael Wert, and Roberts himself initially was confident no actual conflict would arise, Roberts was not so sanguine at a later hearing. As Justice Callahan related in her dissenting opinion below: "[T]he Wert angle turned far more ominous when Roberts returned to court in June and reported that, upon examining the court file, he discovered that Wert was bailed out of jail just days before the murder and had posted a $5,000 bond. According to Roberts '[t]hat immediately clicked a light on in my head because the DA [district attorney] has been telling me all along the motive for the murder . . . was robbery or burglary. And the theory was that this old guy kept stacks of cash around his house.' Roberts went on to explain '[I]f, in fact, my defense were to be that Wert did this, I might want to play into their robbery theory, and weave it in[to] my defense. In other words, *I might want to catch their robbery theory and throw it back to them by saying, you are darn right, the motive for this homicide was robbery. Wert did the robbery. Wert did the homicide. Wert had just bailed out of jail, needed to pick the money up to pay his bail bondsman. It all makes sense.*' (Italics added.) Roberts also discovered that Wert had his car impounded, and was found in the possession of a stolen weapon and several grams of methamphetamine, indicating 'he was dealing.' Roberts also learned there was a drug dealer living down the street from defendant, and if it could be established that the dealer was supplying Wert 'that would blow this case way out for [defendant],' because it would place Wert on the same street as the victim through his relationship with the dealer. Roberts was concerned that if the robbery could be tied to a network of drug dealers on the same street with whom Wert could be linked, it was quite possible 'they are continuing to protect Michael Wert' by pinning the murder on defendant. [¶] In marked contrast to his attitude in February, Roberts told the court the situation with Wert was 'very troublesome' and made him 'very uneasy.' "

As *Wheat* recognizes, when the right to preferred counsel under the Sixth Amendment collides with the right to the effective assistance of counsel, also guaranteed by the Sixth Amendment, an accommodation must occur. In such cases, a court "must recognize [the] presumption in favor of [defendant's] counsel of choice . . . may be overcome not only by a demonstration of actual conflict but by a showing of *a serious potential* for conflict." (*Wheat, supra*, 486 U.S. at p. 164, italics added.) Consequently, although I doubt *Wheat*'s deferential "substantial latitude" standard of review applies in a case, as here, where a criminal defendant has a long-established attorney-client relationship and makes a knowing and voluntary waiver of the conflict, because the record

reveals a serious possibility that Roberts's conflict would undermine the fairness of the trial, I conclude the trial court's removal of Roberts did not violate defendant's Sixth Amendment right to counsel of his choice, whatever its scope.

## II

Although I also agree with the majority that the trial court did not, by removing Roberts, violate defendant's right to counsel under the California Constitution, I cannot subscribe to the majority's treatment of this issue. At the threshold, the majority announces that it is "far from clear whether [our prior decisions in this area] are grounded on the state Constitution." (Maj. opn., *ante*, at p. 243.) I do not share the majority's doubts.

Article I, section 15 of the California Constitution provides in part: "The defendant in a criminal cause has the right . . . to have the assistance of counsel for the defendant's defense [and] to be personally present with counsel." In *People v. Crovedi* (1966) 65 Cal.2d 199 [53 Cal.Rptr. 284, 417 P.2d 868], cited by the majority, this court began its discussion by framing the issue thusly: "The single issue of substance in this case is whether defendant Crovedi was denied his right to the assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the federal Constitution, *and article I, section 13, of the state Constitution.*" (*Id.* at p. 201, italics added.)[1]

Similarly, *Maxwell v. Superior Court, supra*, 30 Cal.3d 606, also cited by the majority, began its discussion of the issue on page 612 this way: "The right to counsel guaranteed *by section 15 of article I of the California Constitution* does contemplate effective counsel, and effectiveness means more than mere competence." (Italics added.) *Maxwell* goes on immediately thereafter to discuss the "right to loyal counsel," a clear reference to the state constitutional right. (*Ibid.*) *Cannon v. Commission on Judicial Qualifications* (1975) 14 Cal.3d 678 [122 Cal.Rptr. 778, 537 P.2d 898], also cited by the majority, speaks in terms of the "right to counsel" (*id.* at pp. 696–697) and, while the opinion does not make explicit the basis of such right, its citation to *People v. Crovedi, supra*, 65 Cal.2d 199, suggests it is relying on both the federal and state Constitutions. As is clear, we have recognized a state constitutional basis for the right to counsel on several occasions.

Although the majority fails to acknowledge it, we also have for years treated conflict of counsel issues differently under the California Constitution

---

[1] At the time *Crovedi* was decided, article I, section 13 of the state Constitution provided in part: "In criminal prosecutions, in any court whatever, the party accused shall have the right . . . to appear and defend, in person and with counsel." (See *People v. Ashley* (1963) 59 Cal.2d 339, 360, fn. 6 [29 Cal.Rptr. 16, 379 P.2d 496].)

than under the federal Constitution, recognizing that the state charter grants criminal defendants greater rights both to challenge and to waive conflicts of counsel than does its federal counterpart. Thus, "[t]o establish a federal constitutional violation, a defendant who fails to object at trial must show that an actual conflict of interest 'adversely affected his lawyer's performance.' (*Cuyler* v. *Sullivan* (1980) 446 U.S. 335, 348 [64 L.Ed.2d 333, 100 S.Ct. 1708] . . . , fn. omitted . . . .) To show a violation of the corresponding right under our state Constitution, a defendant need only demonstrate a *potential* conflict, so long as the record supports an 'informed speculation' that the asserted conflict adversely affected counsel's performance. (. . . *People* v. *Mroczko* (1983) 35 Cal.3d 86, 104–105 [197 Cal.Rptr. 52, 672 P.2d 835] . . . .)" (*People v. Frye* (1998) 18 Cal.4th 894, 998 [77 Cal.Rptr.2d 25, 959 P.2d 183].) As Justice Davis's lead opinion below explained: "California's greater solicitude [of] the right to conflict-free counsel is consistent with its greater solicitude [of] the right to counsel of choice, so long as the defendant is fully informed about the conflict and the right to conflict-free counsel and knowingly and intelligently waives these, including any appellate issues of ineffective representation arising from the conflict." (See also *People v. Easley* (1988) 46 Cal.3d 712, 729, fn. 17 [250 Cal.Rptr. 855, 759 P.2d 490] [recognizing greater protection for one's choice of counsel under the state Constitution]; *People v. Peoples* (1997) 51 Cal.App.4th 1592, 1599 [60 Cal.Rptr.2d 173] [California does not "literally follow" the *Wheat* rule]; *Alcocer v. Superior Court* (1988) 206 Cal.App.3d 951, 958 [254 Cal.Rptr. 72] [same].)

Contrary to the deferential standard announced in *Wheat, supra,* 486 U.S. 153, which would accord the trial court "substantial latitude" (*id.* at p. 163) to remove a defendant's attorney for a conflict of interest despite the defendant's willingness to waive the conflict and which commits that decision to the "discretion" and "informed judgment of the trial court" (*id.* at p. 164), California follows a different rule, one that recognizes that, when represented by a lawyer who has a potential conflict of interest, "a defendant is master of his own fate" (*Alcocer v. Superior Court, supra,* 206 Cal.App.3d at p. 957). We explained the rule in *People v. McKenzie* (1983) 34 Cal.3d 616 [194 Cal.Rptr. 462, 668 P.2d 769] (*McKenzie*),[2] a case involving an attorney who declined to participate in the trial proceedings because of the defendant's refusal to cooperate with him. We opined: "Counsel may also be relieved on the court's own motion, even over the objections of defendant or counsel. Although the judge has the discretion to overrule defendant's choice of counsel *in order to eliminate potential conflicts*, ensure adequate representation, or prevent substantial impairment of court proceedings, *this discretion has been severely limited by California decisions*. Thus, 'the state should keep to a necessary

---

[2] *McKenzie, supra,* 34 Cal.3d 616, was overruled on a different ground in *People v. Crayton* (2002) 28 Cal.4th 346, 364–365 [121 Cal.Rptr.2d 580, 48 P.3d 1136].

minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources—and . . . that desire can constitutionally be forced to yield *only when it will result in significant prejudice to the defendant himself* or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.' (*People* v. *Crovedi*[, *supra*,] 65 Cal.2d [at p.] 208 [53 Cal.Rptr. 284, 417 P.2d 868].)

"While we recognize that courts should exercise their power to remove defense counsel *with great circumspection* [citations], they nevertheless retain the obligation to supervise the performance of defense counsel to ensure that adequate representation is provided. [Citations.] Thus, a trial judge may remove defense counsel despite the objections of the defendant and his attorney *if a serious conflict of interest arises during the trial proceedings* resulting in 'an obviously deficient performance. Then the court's power and duty to ensure fairness and preserve the credibility of its judgment extends to recusal even when an informed defendant, for whatever reason, is cooperating in counsel's tactics.' " (*McKenzie, supra,* 34 Cal.3d at pp. 629–630, italics added, quoting *Maxwell v. Superior Court, supra,* 30 Cal.3d at p. 619, fn. 10.)

In *People v. Bonin, supra,* 47 Cal.3d 808, we explained that a trial court has the duty to inquire into counsel's potential conflict of interest, but "[a]fter the trial court has fulfilled its obligation to inquire into the possibility of a conflict of interest and to act in response to what its inquiry discovers, the defendant may choose the course he wishes to take. If the court has found that a conflict of interest is at least possible, the defendant may, of course, decline or discharge conflicted counsel. But he may also choose not to do so: 'a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests.' [Citations.]" (*Id.* at p. 837.) Commenting on our decision in *Bonin,* the appellate court in *People v. Burrows* (1990) 220 Cal.App.3d 116, 125 [269 Cal.Rptr. 206] said: "California makes a defendant the master of his fate and allows him to proceed uninterrupted, with the exceptions of flagrant circumstances of attorney misconduct or incompetence [citation], with counsel of his choice if the parties involved in the conflict properly waive any potential or actual conflicts."

As is clear, the state constitutional standard demands less deference be shown to a trial court's decision to remove counsel over a defendant's objection and more strongly supports a criminal defendant's choice to keep his preferred legal advocate at his side despite the presence of a possible conflict of interest.

Applying that less deferential standard here, I conclude the trial court did not violate defendant's right to counsel of his choice under article I, section

15 of the California Constitution. As explained, *ante*, Attorney Roberts informed the trial court that his previous representation of Wert was "very troublesome" and made him "very uneasy." He expressed concern he might be sued for malpractice. Although Roberts had represented defendant for almost two years, the trial was still several weeks, if not months, away, and at that time whether additional evidence would emerge connecting Wert to the crime was unknown. Under the circumstances, although a trial court's discretion under California law to remove appointed counsel over a defendant's objection is "severely limited" (*McKenzie, supra*, 34 Cal.3d at p. 629), the facts known at the time the trial court ruled comprised "a serious conflict of interest" (*id.* at p. 630) that could have resulted in "significant prejudice to the defendant" (*ibid.*). The trial court thus did not violate defendant's state constitutional right to his counsel of choice by removing Roberts and appointing substitute counsel.

Moreno, J., concurred.