Filed 3/26/13  Coronado v. Super Ct. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| JUAN RAMON CORONADO, JR., | |
| Petitioner, | E055313 |
| v. | (Super.Ct.No. RIF141160) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Christian F. Thierbach, Judge.  Petition granted.

Gary Windom, Public Defender, and Richard V. Myers, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

1

Paul Zellerbach, District Attorney, and Ivy B. Fitzpatrick, Senior Deputy District Attorney, for Real Party in Interest.

Defendant Juan Ramon Coronado, Jr., petitions this court to determine that the trial court acted improperly and without substantial evidence in disqualifying the public defender's office from representing him in the current prosecution for capital murder and being a felon in possession of a firearm. Although we believe there is substantial evidence to show that the public defender's office has a potential conflict of interest, we conclude that the trial court should have first informed defendant of this conflict and inquired whether he was willing to make a voluntary and knowing waiver of it. Accordingly, we grant the petition and remand the matter to the trial court with direction to make such an inquiry.

FACTUAL AND PROCEDURAL BACKGROUND

Coronado and a codefendant, Eusebio "Cheeto" Fierros,[1] were charged with capital murder; Coronado is also charged with being a felon in possession of a firearm and receiving stolen property. Coronado gave a statement to the police first indicating that Fierros was the shooter, but then admitting that he was.

At a trial readiness conference on November 22, 2011, the prosecution submitted a list of discovery and other issues to be discussed at a hearing. It requested to submit,

---

[1] After this court stayed proceedings with respect to Coronado's case, on February 12, 2012, a jury convicted Fierros of first degree murder and rendered true findings on the robbery and kidnapping special circumstances, as well as the firearm enhancement. On March 7, 2012, after a penalty phase, the jury returned a death verdict for Fierros.

under seal, certain documents, including two memos prepared by investigators employed by the Riverside County Public Defender's Office—Coronado's counsel. These memos were submitted to a defense mental health expert and were inadvertently sent to the prosecution. The prosecution refused the defense's request that they return the first memo and ignore its contents.

The first memo dated June 11, 2008, is by investigator Sam Merenda and summarizes an interview he conducted with a potential witness named Marquan Lee, a friend of Coronado's. Merenda reported that Lee said he had seen Coronado in possession of a gun similar in appearance to the weapon suspected to have been used in killing the victim. Coronado told Lee that he and " 'Cheeto' had 'put a lick on an old man and took his car.' " Merenda stated: "[Lee] agreed to call me if he comes up with 'Any' information that may assist in our defense. I explained Cheeto was bragging he killed the old man, so it could be useful if we can speak with others he had told, and possibly put the gun in his hand and not Juan's. [¶] I know there may be a sentence or two that may be useful, but didn't know if you would want to take a chance at putting him on the stand. He could be a risk, and if interviewed by the DA, I think he may have trouble controlling his thoughts. [¶] Let me know if you want an 'interview' report and I'll get you one, minus the confession."

The second memo, dated August 17, 2011, summarizes a second interview of Lee by investigator Gene Brisco. During this interview, Lee never mentions hearing Coronado saying anything about "putting a lick on an old man" or seeing him in possession of gun. Lee told the investigator that the first time he heard anything about

3

the murder was when Coronado read him a newspaper article about Fierros's arrest. Lee stated that Coronado seemed surprised about the murder and Fierros's involvement.

Both of these memos were given to a psychologist who was retained by the defense to conduct a neuropsychological evaluation of Coronado. Attached to the report prepared by the psychologist was an appendix listing numerous documents, reports, and transcripts she reviewed and considered in conducting her examination. The two interview memos were included in the appendix, and all of these documents were provided by defense counsel to the prosecutor during the discovery process.

Deputy Public Defender Addison Steele told the court that his intention was to file a declaration under seal, but then stated, "quite frankly I don't care, I will tell the Court right now how this all happened." He seemed to acknowledge that there were portions of Merenda's report that he would not necessarily like, such as relaying information to a witness about strategy, and that "a decision was made . . . this is never, ever going over to the district attorney's office, for all kinds of reasons."

The prosecutor pointed out, however, that Coronado was consulting mental health experts to support a "false confession" claim. He argued that Brisco's memo would explain to such experts how Coronado became aware of the details of the crime in his purportedly false confession. The district attorney also argued that Merenda's memo could be construed to show that Merenda was informing Lee of the defense strategy.

The trial court ordered that these documents be filed under seal with no further dissemination of the information contained in them.

Later during the November 22 hearing, the parties discussed a situation involving Kristina Allen, who had been charged in a separate information with the same homicide as Coronado and Fierros. The district attorney had reached a plea agreement with her and, pursuant to that agreement, she made statements about the events and identified Coronado as the shooter. Subsequently, love letters between Allen and Coronado were discovered in their respective jail cells. Steele and investigator Brisco went to interview Allen without talking to her attorney. A portion of the interview was taped in which she now states that Coronado was not the shooter. The district attorney has taken the position Allen failed to comply with her plea agreement and informed her attorney and the trial court that the district attorney's office will pursue homicide charges against her using her statements.

At subsequent hearings in December 2011, the trial court expressed growing concern about actions of the public defender's office with respect to the two memos and the interview of Allen, and it indicated that there was a potential conflict of interest. On December 16, the court indicated that it and the parties had to address at the next hearing "the false confession expert and to what extent, if any, the memos that were filed under seal come into play and whether they should be provided to [codefendant] Fierros." In the court's view, the big issue was Merenda's memo alluding to a suggestion in the terms of a strategy that might involve the fabrication of evidence.

On December 22, 2011, the trial court stated that after reading the record it was convinced that the "ability of a meaningful defense for defendant Coronado has been severely compromised if not totally eliminated by the breach of the attorney-client

5

privilege committed by defense counsel Addison Steele. The ultimate result is that defendant Coronado has been denied effective assistance of counsel. Furthermore there is a very real appearance that defense investigators employed by the public defenders office have engaged in conduct suggesting a willingness to fabricate or alter evidence up to and including the subornation of perjury in an effort to mount a defense."

Public Defender Windom appeared at this hearing and indicated that the investigators could be walled off. The court, however, ordered that the public defender's office be recused from any further representation of Coronado.

Steele requested that the court conduct an in camera hearing where he could be placed under oath and explain what happened. He states that there was an incomplete record and the appellate court would only have the face of the two documents but that there was information having to do with communications with Coronado that he could not say in open court. The court denied this request.

A petition for writ of mandate was filed in this court seeking to vacate the order of recusal. Coronado[2] has submitted a declaration with this petition stating that the Riverside County Public Defender's Office has been representing him since January 29, 2008, with Steele being the lead counsel since April of that year. He believes they are doing a wonderful job and are fighting for his life while any replacement counsel would

---

[2] Because the trial court stayed the recusal order so that writ review could be sought, the public defender's office remains Coronado's attorney of record and the petition is brought in his name.

only want to earn a paycheck. He wants the public defender's office, and Steele in particular, to continue to represent him.

After issuing a *Palma*[3] notice and considering the district attorney's informal response, this court summarily denied the petition. The Supreme Court granted Coronado's petition for review and transferred the matter to this court with directions to issue an order to show cause.[4]

## DISCUSSION

"It is well established that in considering a motion to disqualify counsel, the 'paramount concern is the preservation of public trust in the scrupulous administration of justice and the integrity of the bar.' " (*Rhaburn v. Superior Court* (2006) 140 Cal.App.4th 1566, 1573 [Fourth Dist., Div. Two].) On appeal, a trial court's removal of counsel for an indigent criminal defendant is reviewed for abuse of discretion. (*People v. Cole* (2004) 33 Cal.4th 1158, 1187.)

Coronado first challenges the trial court's finding of ineffective assistance of counsel, noting that damaging statements attributable to the defendant are often inadvertently disclosed during a death penalty prosecution and are not necessarily fatal or

---

[3] *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178-179.

[4] The Supreme Court's action is not necessarily an expression of its disagreement with our earlier ruling, but that it may believe that an opinion is warranted under the circumstances of this case. Thus, we are in no way precluded from reaching the same result. (*Bridgestone/Firestone, Inc.* v. *Superior Court* (1992) 7 Cal.App.4th 1384, 1389, fn. 4; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2011) ¶ 13:125.1, p. 13-1.)

7

amount to an inability to conduct a meaningful defense as the trial court found. Here, in particular, the first investigator—Merenda—noted that Lee was not a particularly credible witness.

Furthermore, Coronado asserts that there was insufficient evidence to support the finding that the investigators had fabricated, altered, or suborned perjury. He points out that Merenda is employed by the capital defender's office while Brisco works for the public defender's office. Thus, they were not two investigator's working for the same office who were engaged in a sinister plot to suborn perjury. Rather, they produced divergent memos based on separate interviews with an unreliable witness. Indeed, he notes that as a result of the removal order, counsel from the capital defender's office will end up being appointed to represent him.[5]

However, whether or not members of the public defender's office are actually guilty of suborning perjury or any misconduct[6] is not as significant as the fact that the nature of the investigation may become an issue during trial. Even if the defense does not call Lee as a witness, the prosecution may very well do so, particularly if the public defender asserts a "false confession" defense. His statements given to the investigators

---

[5] It must be pointed out that Merenda's report is clearly identified as one originating from the public defender's office. The record does not reflect that he is or was employed by the capital defender's office.

[6] We note that the trial court did not find that fabrication of evidence and subornation of perjury had in fact occurred, but that there was a very real appearance that they had.

will then become an issue.[7, 8]  Thus, trial counsel, whether it be Steele or another deputy from the public defender's office, may very well be placed in the position of defending the actions of the investigators and the entire defense team compromising his efforts on defending his client.  A conflict of interest encompasses situations in which an attorney's loyalty to or efforts on behalf of his client are threatened by his responsibilities to a third party or his own interests.  (See *People v. Doolin* (2009) 45 Cal.4th 390, 417.)  It is also possible that their conduct may tarnish defendant in the eyes of the jury.

We believe that this situation can more appropriately be analyzed as a potential conflict case.  The disclosure of the investigators' memos has already taken place and defense counsel, be it the public defender or another attorney, must deal with that fact in going forward.  Thus, the past actions of the public defender's office do not justify recusal; rather, their effect on the future conduct of the defense does.

The public defender argues that the trial court predicated its recusal on the violation of the attorney-client privilege[9] and ineffective assistance of counsel—not on

---

**7**  Indeed, questions about these memos may impact the decision whether to pursue such a strategy.

**8**  We glean from the record that neither the prosecution nor defense will be calling Kristina Allen as a witness in this case, and the trial court did not mention Steele's contact with her in its ruling.

**9**  Throughout the course of these hearings dealing with the investigator memos, the trial court and the parties indicated that the problem concerned attorney work product—not attorney-client privilege.  We presume that the court's reference to a breach of the attorney-client privilege was simply a slipup in its oral pronouncement that was incorporated without change into the written order.

any conflict of interest.  Therefore, it is argued that this court must decide the matter on the actual ground for removal articulated by the trial judge.  We must point out that several times during these hearings the trial court expressed concern about a potential conflict of interest, although it did not expressly refer to conflict of interest in its ruling.  In reviewing the recusal order, we accept as correct all of the trial court's express or implied findings supported by substantial evidence.  (*City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 322.)  Moreover, claims that a defendant has been denied his Sixth Amendment right to conflict-free counsel is a category of ineffective assistance of counsel.  (See *People v. Doolin*, *supra*, 45 Cal.4th 390, 417.)  The circumstances the trial court cited raise a genuine concern about the public defender having a possible conflict of interest.  The public defender dismisses these concerns as merely speculative.  This is not a typical conflict case and none of these possibilities may arise.  However, we are not viewing this with the benefit of hindsight on appeal, but only with such information that shows that a potential conflict may arise.

Counsel may be relieved on the trial court's own motion, even over the objection of the defendant or his counsel, to eliminate potential conflicts, ensure adequate representation, or prevent substantial impairment of court proceedings.  (*People v. Cole*, *supra*, 33 Cal.4th 1158, 1187.)  During oral argument, the People urged us simply to deny the petition citing *People v. Jones* (2004) 33 Cal.4th 234.  We certainly recognize the authority to do so.  In *People v. Jones*, the Supreme Court found no error in removing defendant's appointed counsel for a potential conflict notwithstanding defendant's offer to waive that conflict because the trial court was seeking to protect the defendant's right

10

to competent counsel. (*Id.* at pp. 244-245; see also *People v. Richardson* (2008) 43 Cal.4th 959, 994-997.)

 *Jones* is distinguishable because it holds only that the removal of potentially conflicted counsel did not violate a defendant's right to counsel. The defendant did not argue that the trial court abused its discretion in doing so. (See *People v. Jones*, *supra*, 33 Cal.4th at p. 244, fn. 2.) Similarly in the case of *People v. Noriega* (2010) 48 Cal.4th 517, the Supreme Court held that there was no violation a defendant's state or federal constitutional right to counsel, and went further and held that assuming the trial court abused its discretion in removing counsel under its statutory authority, the defendant had failed to show prejudice. We are confronted with deciding the exact issue that the Supreme Court did not decide—whether the trial court did abuse its discretion in removing the public defender from representing the defendant. Moreover, we must decide the issue at the pretrial stage, not on appeal where we would have the benefit of hindsight. Thus, although removal of appointed counsel does not involve a defendant's constitutional rights, some consideration should be given to the right of a defendant "to decide for himself who best can conduct the case must be respected wherever feasible." (*Maxwell v. Superior Court* (1982) 30 Cal.3d 606, 615, fn. omitted, disapproved on another ground in *People v. Doolin*, *supra*, 45 Cal.4th 390.) Prior to removing appointed defense counsel, we believe the better course is for the court to advise the defendant of the problem and, if possible, to secure a knowing and intelligent waiver. *Alcocer v. Superior Court* (1988) 206 Cal.App.3d 951, set forth general guidelines for a trial court to follow when confronted with a potential conflict. We believe that these guidelines

11

remain viable and, in general, a trial court should advise the defendant of the problem and inquire whether he wishes to waive any conflict.[10]  Here, the declaration Coronado submitted to this court is insufficient to show a knowing and intelligent waiver, but we believe that the trial court abused its discretion by failing to follow these guidelines when confronted with this situation.  Before recusing the public defender, the court should have explained to Coronado the potential pitfalls of keeping counsel and advised him of alternatives.  It should have appointed independent counsel to confer with Coronado and, if after conferring with counsel Coronado stilled wished to continue with his attorney, the court should have secured a knowing and intelligent waiver.

Finally, the public defender does not contend in its traverse that the trial court erred in failing to grant the request for an in camera hearing.[11]  Instead, it is argued that if we find that the removal order cannot stand, we should issue an order to that effect and let the trial judge exercise his discretion from there.  In other words, the trial court is free to conduct a conflict inquiry and obtain waivers from Coronado if it so desires—at any

---

**10** We recognize that exceptions may occur where the misconduct or incompetence is so flagrant that the fairness of the trial would be undermined if the attorney were allowed to remain.  (*People v. Burrows* (1990) 220 Cal.App.3d 116, 125; see also *People v. Jones*, *supra*, 33 Cal.4th 234, 252 (conc. opn. of Werdegar, J.).)  We do not believe that this is such a case.

**11** At this point, we cannot fault the trial court for failing to conduct an in camera hearing as requested by Steele on December 22, 2011.  As discussed *ante*, the mere fact that the memos had been disclosed is the significant fact and not what had happened leading to their disclosure.  Moreover, we note that Steele had previously proclaimed in open court that he had explained how everything had happened and constituted everything he would have put under seal.

time during trial—but, in the public defender's view, there should be no joint venture between this court and the trial court in making the decision to conduct such an inquiry. We reject the notion that we are making a de novo determination that a potential conflict exists. We are reviewing the recusal order to determine whether the trial court's express or implied findings are supported by substantial evidence. (*City National Bank v. Adams*, *supra*, 96 Cal.App.4th at p. 322.)

DISPOSITION

Let a writ of mandate issue requiring the trial court to set aside its order recusing the Riverside County Public Defender's Office and to hold a new hearing in conformance with the views expressed herein.

Petitioner is directed to prepare and have the writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

The stay of proceedings previously issued by this court is vacated.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____

P. J.

We concur:


RICHLI _____

J.


KING _____

J.

13