[No. S160953. Apr. 5, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL LORETO NORIEGA, Defendant and Appellant.

## COUNSEL

Mark L. Christiansen, under appointment by the Supreme Court, for Defendant and Appellant.

Richard Such for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Donald E. De Nicola, Deputy State Solicitor General, Gary W. Schons, Assistant Attorney General, Steve Oetting and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KENNARD, J.**—Before trial, and over defendant's objection, the trial court replaced defendant's appointed counsel, the public defender, because of a perceived conflict of interest arising from the public defender's previous representation of a potential prosecution witness in defendant's case. A jury convicted defendant, and he appealed. A divided Court of Appeal panel reversed the judgment of conviction.

All three justices agreed that the trial court's replacement of appointed counsel did not violate defendant's right to counsel, or to counsel of choice, under the federal Constitution's Sixth Amendment; but they concluded

that the replacement violated defendant's right to counsel under our state Constitution, and that under state statutory law the replacement was an abuse of the trial court's discretion. In addition, a two-justice majority held that the replacement of counsel violated defendant's due process right under the federal Constitution's Fifth Amendment, and that this error required automatic reversal. The third justice, however, was of the view that the error was harmless and that the judgment of conviction should be affirmed.

We granted the Attorney General's petition for review. The Attorney General contends that in replacing defendant's appointed counsel with another court-appointed attorney, the trial court did not violate defendant's right to counsel under either the federal or the state Constitution. Conceding that the replacement violated state statutory law and was an abuse of discretion by the trial court, the Attorney General argues that the error requires reversal only upon a showing of prejudice, which defendant did not establish. We agree with the Attorney General on both points.

# I

Defendant Daniel Loreto Noriega and codefendant Manuel Paredes were sentenced to life in prison without the possibility of parole for the killing of Cesar Cortez, who had failed to pay a drug debt. (Paredes is not a party in the proceeding before this court.)

The facts pertinent to the trial court's replacement of the Riverside County Public Defender as defendant's appointed counsel are these: In December 2002, the prosecutor mentioned at a court hearing that he intended to call as a trial witness one Coin Tran, who while confined at the Riverside County jail had allegedly witnessed an incident during which defendant made "tacit admissions" of guilt. The prosecutor expressed concern that Tran's previous representation by the Riverside County Public Defender might create a conflict of interest. Supervising Deputy Public Defender Nicholas DePrisco disagreed, pointing out that there were "no secrets or confidences" in Tran's file and that a different deputy had handled Tran's case. The trial court then remarked that if Tran were to become a prosecution witness in defendant's case, Deputy Public Defender James Ashworth, who at that point had been assigned to defendant's case for 13 months, would have to cross-examine Tran, which in the court's view would create a "potential" conflict of interest for Ashworth. When Ashworth asked defendant whether he would "waive" any conflict, defendant answered, "Yes." The trial court nonetheless relieved the public defender as defendant's counsel and appointed Attorney Peter Morreale, who thereafter represented defendant for the remainder of the trial proceedings, spanning a period of four years.

## II

The Attorney General challenges the Court of Appeal majority's holding in this case that the replacement of defendant's appointed counsel violated defendant's federal constitutional right to due process of law under the Fifth Amendment, and he challenges the court's unanimous holding that the replacement violated defendant's state constitutional right to counsel. The Attorney General concedes that, as the Court of Appeal unanimously concluded, under state statutory law the trial court's replacement of counsel was an abuse of discretion. But the Attorney General disagrees with the Court of Appeal majority holding that the error requires reversal of defendant's conviction without a showing of prejudice. We address these contentions below.

### A. *Federal Constitution*

Central to our consideration of the federal constitutional issues before us is the United States Supreme Court's recent decision in *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140 [165 L.Ed.2d 409, 126 S.Ct. 2557]. There, a defendant facing federal criminal charges in Missouri retained California lawyer Joseph Low to represent him. (*Id.* at p. 142.) Because Attorney Low was from another state, he needed the federal district court's permission to appear in court as the defendant's counsel. Low filed the appropriate motion (for admission *pro hac vice*), but the district court denied it. (*Id.* at pp. 142–143.)

The defendant then retained local attorney Karl Dickhaus to represent him at trial. (*United States v. Gonzalez-Lopez, supra,* 548 U.S. 140, 143.) Attorney Low, who was still retained by the defendant, tried to assist Dickhaus in his representation of the defendant, but the federal district court would not allow Low to communicate with Dickhaus during court proceedings or to meet with the defendant while trial was in progress. (*Ibid.*) The defendant was convicted, but the federal Eighth Circuit Court of Appeals reversed the conviction, holding that the federal district court had lacked any valid ground to prohibit Low from representing the defendant, and also that not allowing the defendant to be represented by his preferred attorney, Low, was a constitutional violation that was not subject to harmless-error review. (*Id.* at pp. 143–144.)

█ The high court agreed with the Eighth Circuit that the district court had violated the defendant's right to counsel of choice under the federal Constitution's Sixth Amendment, and that the violation was structural error requiring automatic reversal. (*United States v. Gonzalez-Lopez, supra,* 548 U.S. 140, 147–150.) As the court explained, an element of the Sixth

Amendment right to counsel "is the right of a defendant who does not require appointed counsel to choose who will represent him." (548 U.S. at p. 144.) The Sixth Amendment, the court noted, " 'guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.' " (548 U.S. at p. 144, quoting *Caplin & Drysdale, Chartered v. United States* (1989) 491 U.S. 617, 624–625 [105 L.Ed.2d 528, 109 S.Ct. 2646].) This Sixth Amendment guarantee is subject to an important limitation, however: "[T]he right to counsel of *choice* does not extend to defendants who require counsel to be *appointed* for them." (*United States v. Gonzalez-Lopez, supra,* 548 U.S. at p. 151, italics added.)

Here, citing defendant's indigence and his need for appointed counsel, the Court of Appeal panel unanimously agreed that defendant had no right under the federal Constitution's Sixth Amendment to choose which attorney would represent him at taxpayers' expense. But a two-justice majority concluded that the trial court's replacement of one appointed counsel with another— based on a perceived conflict of interest—violated defendant's right to effective assistance of counsel under the "due process clause of the Fifth Amendment, not the Sixth Amendment." The majority apparently reasoned that because the public defender's potential conflict of interest was "relatively minor and remediable," the trial court's replacement of the public defender was not necessary to protect defendant's right to effective assistance of counsel and therefore resulted in a violation of that right.

■ The Court of Appeal majority was wrong, for two reasons. First, contrary to the majority's assertion, under the federal Constitution the right to effective assistance of counsel is grounded in the Sixth Amendment's right to counsel, not in the Fifth Amendment's right to due process of law. (See *United States v. Gonzalez-Lopez, supra,* 548 U.S. at p. 147 ["our recognition of the right to effective counsel *within the Sixth Amendment* was a consequence of our perception that representation by counsel 'is critical to the ability of the adversarial system to produce just results.' [Citation.]" (italics added)].)

■ Second, replacement of one appointed attorney with another does not violate a defendant's constitutional right to effective assistance of counsel unless replacement counsel's representation " 'was deficient when measured against the standard of a reasonably competent attorney and . . . this deficient performance caused prejudice in the sense that it "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." . . .' " (*People v. Sapp* (2003) 31 Cal.4th 240, 263 [2 Cal.Rptr.3d 554, 73 P.3d 433]; see *Strickland v. Washington* (1984) 466 U.S. 668, 686 [80 L.Ed.2d 674, 104 S.Ct. 2052].) Because defendant here has not even attempted to show that the performance by his replacement

counsel, Morreale, was in any way deficient, he has not established a violation of his federal constitutional right to the effective assistance of counsel.

### B. *State Constitution*

The Court of Appeal unanimously concluded that the trial court's replacement of defendant's appointed attorney violated his state constitutional right to counsel. (Cal. Const., art. I, § 15.) The Attorney General contends that defendant has no right under our state Constitution to select or keep his court-appointed attorney. We agree, as explained below.

Our "state Constitution does not give an indigent defendant the right to *select* a court-appointed attorney," but a trial court may abuse its discretion in refusing to appoint an attorney "with whom the defendant has a long-standing relationship." (*People v. Jones* (2004) 33 Cal.4th 234, 244 [14 Cal.Rptr.3d 579, 91 P.3d 939].) "[R]emoval of an indigent defendant's appointed counsel . . . poses a greater potential threat to the defendant's constitutional right to counsel" than refusing "to *appoint* an attorney requested by the defendant . . . ." (*Ibid.*)

Here, the Court of Appeal, in holding that the trial court's replacement of defendant's appointed counsel violated the California Constitution, relied heavily on this court's statement in *Smith v. Superior Court* (1968) 68 Cal.2d 547, 562 [68 Cal.Rptr. 1, 440 P.2d 65] (*Smith*), that an indigent criminal defendant's established attorney-client relationship with appointed counsel is "no less inviolable than if counsel had been retained." That statement is of no assistance to defendant, however.

At issue in *Smith* was "whether a trial judge has or should have the power to remove a court-appointed defense attorney, over the objections of both the attorney and the defendant, on the ground of the judge's subjective opinion that the attorney is 'incompetent' because of ignorance of the law to try the particular case before him." (*Smith, supra,* 68 Cal.2d at p. 549.) In concluding that the trial court lacked such a power, we stated in *Smith*: "[T]he *constitutional guarantee* of the defendant's right to counsel requires that his advocate, whether retained or appointed, be free in all cases of the threat that [counsel] may be summarily relieved as 'incompetent' . . . ." (*Id.* at p. 562, italics added.) But as we observed in *People v. Jones, supra,* 33 Cal.4th 234, 243, it is unclear whether this constitutional guarantee refers to the Constitution of California or that of the United States; if the latter, the quotation from *Smith* provides no support for the Court of Appeal's

holding here that the replacement of defendant's appointed counsel violated California's Constitution. Moreover, a threat that counsel will be summarily removed for incompetence, as occurred in *Smith* poses a far more inhibiting constraint on counsel's freedom to mount a vigorous defense than the possibility that an ethical conflict will require counsel's removal, as occurred here. Thus, as this court held in *Jones*, a trial court does not violate a defendant's right to counsel under the state Constitution when it "removes a defense attorney because of a potential conflict of interest." (*People v. Jones*, at p. 244.)

This case falls within that holding. Over defendant's objection, the trial court relieved the public defender from further representation of defendant because of the court's concern that the public defender's duty of loyalty to defendant might conflict with the public defender's duty of loyalty to former client Tran, a potential prosecution witness in this case. Because the trial court removed the public defender before trial to forestall the risk that during trial this potential conflict would ripen into an actual conflict that would preclude the public defender from providing defendant with effective representation, the order did not deny defendant his right to counsel under our state Constitution.

### C. State Statute

██ The statutory source of the trial court's authority to disqualify an attorney derives from its power "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (Code Civ. Proc., § 128, subd. (a)(5).) This power, which is " 'inherent in every court' " (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159 [84 Cal.Rptr.3d 597, 194 P.3d 330]), authorizes a trial court in either a civil or a criminal case to discharge an attorney who has a conflict of interest. (See *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 [86 Cal.Rptr.2d 816, 980 P.2d 371]; *People v. Jones, supra*, 33 Cal.4th at p. 244, fn. 2.) A trial court's disqualification of an attorney is generally reviewed for abuse of discretion. (*Charlisse C., supra*, at p. 159; *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–713 [76 Cal.Rptr.3d 250, 182 P.3d 579].)

Here, the Court of Appeal unanimously concluded that the trial court abused its discretion in replacing the public defender without explaining to defendant the potential pitfalls of keeping counsel who has an ethical conflict and without advising defendant of the alternatives available to him.

 The Attorney General concedes that the trial court's replacement of counsel was an abuse of discretion. Accepting his concession, we must determine the effect of that error. The Court of Appeal majority, over a vigorous dissent on this issue, concluded that the trial court's erroneous removal order required automatic reversal of defendant's conviction.[1] The Attorney General argues that, as the dissenting Court of Appeal justice pointed out, the error warrants reversal of defendant's conviction only if it resulted in a miscarriage of justice, which defendant has failed to establish. The Attorney General states that to determine the prejudicial effect of statutory error, as occurred here, the appropriate test is the one set out in *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243], requiring reversal only when "it is reasonably probable that a result more favorable to the appealing party would have been reached" if the error had not occurred (*id.* at p. 836).

 We agree with the Attorney General. Relevant here are two decisions of this court. In *People v. Chavez* (1980) 26 Cal.3d 334, 349 [161 Cal.Rptr. 762, 605 P.2d 401], after concluding that the trial court erred in refusing to appoint as trial counsel the same attorney who had represented the defendant at his arraignment, we stated that the error did not require automatic reversal of the defendant's conviction. And in *People v. Williams* (2006) 40 Cal.4th 287, 301 [52 Cal.Rptr.3d 268, 148 P.3d 47], we concluded that automatic reversal was not compelled when the trial court in a death penalty case erred by refusing to appoint a second attorney to assist the defendant. Accordingly, as defendant in this case has not shown a reasonable probability that the trial court's erroneous replacement of the public defender altered the outcome of the trial (*People v. Watson, supra*, 46 Cal.2d at p. 836), he is not entitled to reversal of his conviction.

---

[1] Justice Miller also noted in his concurring and dissenting opinion that when a trial court erroneously replaces appointed counsel over a criminal defendant's objection, the defendant can immediately seek relief by a writ petition filed in a reviewing court. He noted that only by obtaining writ relief, which is a relatively speedy remedy, is it likely that the removed attorney will still be available to represent the defendant. Although here the public defender expressed in the trial court his intention to file a writ on defendant's behalf, he did not do so.

We agree that a promptly filed writ petition normally provides the only effective remedy for an erroneous replacement of appointed counsel because of a potential conflict of interest. But we perceive a practical difficulty. The replaced attorney no longer represents the defendant and therefore cannot, without the defendant's authorization, seek writ relief on the defendant's behalf. (See Code Civ. Proc., § 1069 [writ petition "must be made on the verified petition of the party beneficially interested"].) The newly appointed attorney has standing to file the writ petition but may be reluctant to do so because if relief is granted it will result in termination of that attorney's own appointment. Ideally, the attorney about to be removed should request that the trial court stay removal long enough to permit that attorney to prepare a writ petition. When such a stay has not been granted and reinstatement of the prior appointed attorney would best serve the defendant's interests, however, replacement counsel has a professional obligation to pursue writ relief.

### DISPOSITION

We reverse the Court of Appeal's judgment and remand the matter for further proceedings consistent with our opinion.

George, C. J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

**WERDEGAR, J.,** Dissenting.—The majority concludes the trial court did not violate defendant Daniel Loreto Noriega's constitutional rights (and did not prejudicially violate his statutory rights) when, over his objection, it removed his appointed attorney and replaced him with another attorney. Because I conclude the trial court's action violated defendant's right to counsel under article I, section 15 of the California Constitution, I dissent.

### I

The majority provides the reader with a brief statement of facts it deems "pertinent" (maj. opn., *ante*, at p. 520), but I believe a fuller statement is helpful to understand what happened below. Defendant Noriega and codefendants Manuel Ortega Paredes and Juan Diego Vasquez jointly conspired to collect an unpaid drug debt from Cesar Cortez. Paredes armed himself with an assault rifle, but Vasquez warned them not to do anything "stupid." When Noriega and Paredes drove off to Cortez's house to collect the debt, Vasquez did not accompany them. Noriega and Paredes arrived at Cortez's house and killed him over the unpaid debt. Noriega, Paredes and Vasquez were charged jointly for these crimes. The trial court appointed James Ashworth, a deputy public defender in the Riverside County Public Defender's Office, to represent Noriega. Ashworth worked on the case diligently for over one year, representing Noriega at the preliminary hearing and at arraignment, and dealing with a "huge volume" of discovery.

At some point, Vasquez pleaded guilty to reduced charges and agreed to testify against Noriega and Paredes.

In December 2002, the prosecutor raised the possibility that Attorney Ashworth might have a conflict of interest in representing Noriega. A hearing was held at which the prosecutor explained that he might call a jail inmate named Coin Tran as a prosecution witness. Tran allegedly had been on a sheriff's transport bus with Noriega and had observed him first accuse Vasquez of being a "snitch" and then assault him. The alleged conflict of interest arose because the Riverside County Public Defender's Office had previously represented Tran in an unrelated criminal matter. In that prior case, Tran had been represented by a different deputy, not by Ashworth.

The prosecutor assured the trial court he had no objection to Ashworth's continued representation of Noriega, but opined: "I just bring it to the court's attention as an officer of the court. I don't have an opinion as to who represents Mr. Noriega. I just don't want to try the case twice. I don't want to trample his rights to counsel of his choice, but when I feel there's a situation that comes to my attention . . . that there may well be a conflict of interest, as an officer of the court, I'm obliged to raise it."

Apprised of the problem, defendant offered to waive the potential conflict. In addition, Supervising Deputy Public Defender Nicholas DePrisco informed the trial court he had personally examined Tran's file from the earlier case. He assured the court Tran's case was unrelated to Noriega's murder case, a different deputy public defender had represented Tran, and Tran's file contained no confidential information that would prevent Ashworth from fully and vigorously representing Noriega. When pressed, DePrisco said he could not, in open court,[1] reveal what was in Tran's file, but he offered to disclose its contents in camera. The trial court declined this offer. Over Noriega's objection, the court then relieved Deputy Public Defender Ashworth and appointed different counsel.

Tran eventually did testify at Noriega's trial. On cross-examination, new Defense Counsel Peter Morreale asked Tran whether the assailant—allegedly defendant Noriega—was a "big guy," "bigger than you?" Tran answered in the affirmative. Morreale asked just one more question, to which Tran answered that the man he observed "use[d] his head" to strike Vasquez "in the face." Noriega was convicted of murder and sentenced to life in prison without the possibility of parole.

## II

Like the Sixth Amendment to the United States Constitution, the California Constitution guarantees a criminal defendant the right to counsel for his or her defense. Article I, section 15 of the state Constitution provides that "[t]he defendant in a criminal cause has the right . . . to have the assistance of counsel for the defendant's defense . . . ." This is a right independent from that guaranteed by the federal Constitution. Indeed, when in 1963 the United State Supreme Court decided the justly famous case of *Gideon v. Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792] and interpreted the federal Constitution to require states to provide indigent criminal defendants with attorneys free of charge, the high court simply mandated that which the State of California had already required for decades under the California Constitution. As this court explained in 1940: "The right of an accused to the

---

[1] The prosecutor, Vasquez and his trial counsel, and codefendant Paredes (who was representing himself) were all present at the hearing.

assistance of counsel in his defense is guaranteed by both the federal *and state Constitutions*. To supplement the requirements of the fundamental law the legislature in 1872 adopted section 987 of the Penal Code, which provides: [¶] 'If the defendant appears for arraignment without counsel, he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked if he desires the aid of counsel. *If he desires and is unable to employ counsel, the court must assign counsel to defend him.*' " (*In re Connor* (1940) 15 Cal.2d 161, 164 [99 P.2d 248], italics added.)[2]

In short, the right to counsel springs from two different sources, and the scope of the right under the state Constitution has never been identical to the right under the federal Constitution. (See discussion in *People v. Jones* (2004) 33 Cal.4th 234, 250–253 [14 Cal.Rptr.3d 579, 91 P.3d 939] (conc. opn. of Werdegar, J.).) Because I find the state Constitution dispositive of the case before the court, I do not join the majority's discussion of the federal right to counsel and express no views on that subject.

None disputes that the right to *select* one's own counsel applies only to retained, not appointed, counsel. (*People v. Mungia* (2008) 44 Cal.4th 1101, 1122 [81 Cal.Rptr.3d 614, 189 P.3d 880]; see *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 151 [165 L.Ed.2d 409, 126 S.Ct. 2557] [same rule under the 6th Amend. to the federal Const.].) This case, however, involved not the appointment, but the *removal* of counsel. The issue, therefore, is whether an indigent defendant has a state constitutional right to the continuous representation of his or her court-appointed attorney.

We addressed this issue in *Smith v. Superior Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65]. In that case, the trial court had appointed an attorney named Kanarek to represent the defendant, Smith. When the trial court later removed Kanarek for alleged incompetence, the defendant petitioned for a writ of mandate. This court issued the writ, explaining that although an indigent defendant "is not entitled to demand" a particular attorney be appointed, "that principle . . . is obviously inapplicable to the situation now before us: Mr. Kanarek was himself the counsel appointed by the court . . . to represent Smith in these proceedings, and Smith is demanding not to change that appointment but only to enforce it." (*Id.* at p. 561.)

---

[2] This interplay between state constitutional law and statutory law is essentially unchanged today. Subdivision (a) of Penal Code section 987 now provides: "In a noncapital case, if the defendant appears for arraignment without counsel, he or she shall be informed by the court that it is his or her right to have counsel before being arraigned, and shall be asked if he or she desires the assistance of counsel. *If he or she desires and is unable to employ counsel the court shall assign counsel to defend him or her.*" (Italics added.) Subdivision (b) in the same manner provides for the appointment of counsel in capital cases.

The majority acknowledges that a significant difference exists between the original selection of appointed counsel for an indigent defendant and the removal of that counsel over the defendant's objection. "The *removal* of an indigent defendant's appointed counsel . . . poses a greater potential threat to the defendant's constitutional right to counsel than does the refusal to *appoint* an attorney requested by the defendant, because the removal interferes with an attorney-client relationship that has already been established." (*People v. Jones, supra,* 33 Cal.4th at p. 244, quoted with approval in maj. opn., *ante,* at p. 523.) In this case, however, the majority's deference to, and affirmance of, the trial court's decision to remove Ashworth from the case does not reflect the foregoing concerns.

The importance of an established attorney-client relationship to the overall fairness of a trial (and, by extension, the legitimacy of our adversarial system of jurisprudence) cannot be overstated. As I explained in my separate opinion in *Jones:* " '[E]ffective assistance is linked closely to representation by counsel of choice. When clients and lawyers lack rapport and mutual confidence the quality of representation may be so undermined as to render it an empty formality.' By terminating the existing attorney-client relationship over defendant's objection, the trial court's decision here risked destroying the trust and confidence that had developed between [his attorney] and defendant over almost two years." (*People v. Jones, supra,* 33 Cal.4th at p. 248 (conc. opn. of Werdegar, J.).) And "[a]lthough an indigent accused is not initially entitled to choose his or her own counsel at state expense [citations], *once the defendant establishes an attorney-client relationship with his or her attorney, the law recognizes a protectable interest in that relationship.*" (*Id.* at pp. 246–247, italics added.)

What, then, is the legal standard this court should apply under the state Constitution when evaluating whether a lower court erred in removing a defendant's appointed lawyer? Citing this court's decision in *People v. Jones, supra,* 33 Cal.4th 234, the majority states without elaboration that "a trial court does not violate a defendant's right to counsel under the state Constitution when it 'removes a defense attorney because of a potential conflict of interest.' " (Maj. opn., *ante,* at p. 524, quoting *Jones,* at p. 244.) Reliance on *Jones,* however, is unpersuasive. Although the majority declares that "[t]his case falls within [*Jones*'s] holding" (maj. opn., *ante,* at p. 524), the two cases are patently distinguishable. In *Jones,* the nature of the counsel's conflict was significant and palpable. Roberts, an attorney, was appointed to represent Jones against a charge of murder. But, in a previous case, Roberts had *personally* represented a man named Wert, who was an alternate suspect *for the same murder with which Jones was charged.* After initially declaring himself unconcerned with the potential conflict, Roberts later expressed substantial misgivings about continuing his representation, noting several facts suggesting Wert's possible involvement in the murder. (*Jones,* at

pp. 237–239; *id.* at p. 249 (conc. opn. of Werdegar, J.).) Under those circumstances, this court correctly held that removing Attorney Roberts from the case did not violate the defendant's rights under the state Constitution. (*Jones*, at pp. 244–250.)

Here, in contrast, the potential conflict was minor, almost trivial. The prosecution announced it might call Tran as a witness. Tran had been involved in a prior criminal case that was completely unrelated to the murder charged against Noriega. In that case, Tran had been represented by the public defender's office now representing Noriega, but not by Ashworth personally. Indeed, Ashworth told the court he was unfamiliar with Tran and that "Mr. Tran could walk in here and I wouldn't know him." Ashworth expressed no misgivings about his continued representation, and his supervising attorney assured the court that no grounds for a conflict existed in Tran's file. The trial court declined the opportunity to review the file itself.

As is clear, the two cases are not at all comparable. Yet the majority treats them as legally equivalent, simply citing *Jones* as support for its conclusion that Ashworth's removal did not violate Noriega's right to counsel under the state Constitution. In so doing, the majority elevates the holding in *Jones*, appropriate under the facts there, into an inflexible rule pursuant to which the deference paid to the trial court's decision to remove appointed counsel is such that no appellate court likely could ever subject such a ruling to meaningful review nor act to protect a defendant's right to counsel as guaranteed by the state Constitution.

I am not so willing to relegate our independent state constitutional right to counsel to the historical dustbin. Rather, I would consider the circumstances confronting the trial court at the time it ruled to assess how disabling the potential conflict was and whether removal of counsel appeared necessary to ensure a fair trial, thereby overriding the defendant's interest in maintaining an established relationship with his or her attorney. Although ascertaining the extent of a conflict in advance of trial is sometimes difficult (*Wheat v. United States* (1988) 486 U.S. 153, 162 [100 L.Ed.2d 140, 108 S.Ct. 1692]; *People v. Jones, supra*, 33 Cal.4th at p. 241), here the trial court knew this much when it ruled: (1) defendant had objected to Ashworth's removal; (2) Ashworth had actively represented defendant for more than one year; (3) Ashworth had not personally represented the witness, Tran; (4) Tran's prior criminal case was completely unrelated to defendant's alleged crimes; (5) after examining Tran's file, the supervising deputy public defender assured the court no conflict existed; and (6) the prosecutor did not request that Ashworth be removed. Under these circumstances, even accepting that a trial court, faced with a potential conflict of interest, has greater discretion to remove appointed counsel than retained counsel (see *People v. Easley* (1988) 46 Cal.3d 712, 732

[250 Cal.Rptr. 855, 759 P.2d 490]), I find the conclusion inescapable that the trial court violated the California Constitution by removing Ashworth as Noriega's attorney. Because the majority holds otherwise, I dissent.

## III

My conclusion, based as it is on the California Constitution (Cal. Const., art. I, § 15), renders it unnecessary to reach the Sixth Amendment issue. (*People v. Reyes* (1998) 19 Cal.4th 743, 767 [80 Cal.Rptr.2d 734, 968 P.2d 445] (conc. & dis. opn. of Werdegar, J.); *People v. Bennett* (1998) 17 Cal.4th 373, 393 [70 Cal.Rptr.2d 850, 949 P.2d 947] (conc. opn. of Werdegar, J.).) Nevertheless, I find noteworthy the United States Supreme Court's pronouncement on a similar issue. In discussing whether, for retained counsel, the improper denial of a defendant's counsel of choice is structural error[3] and thus automatically reversible without a showing of prejudice, the high court recently explained: "We have little trouble concluding that erroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error." ' [Citation.] Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument. And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial. In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on the 'framework within which the trial proceeds,' [citation]—or indeed on whether it proceeds at all. It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of the trial at all. Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe." (*United States v. Gonzalez-Lopez, supra*, 548 U.S. at p. 150.)

All of these stated concerns regarding the difficulty of assessing the prejudice flowing from the improper removal of retained counsel, of course, apply equally to the removal of appointed counsel. I therefore find it odd that a trial court's unwarranted interference with an established attorney-client

---

[3] The high court has explained that a structural error "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself. 'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.' " (*Arizona v. Fulminante* (1991) 499 U.S. 279, 310 [113 L.Ed.2d 302, 111 S.Ct. 1246].)

relationship is, in the case of retained counsel, structural error reversible per se under the federal Constitution, while, according to the majority, in the case of appointed counsel, it is neither prejudicial nor even error under the state Constitution. Even were the Sixth Amendment to the federal Constitution to permit this disproportionality between the rights of those with means to hire their own lawyers and those without—a question as yet undecided—we need not, and should not, accept such a rule under article I, section 15 of the California Constitution. Because the majority in this case holds otherwise, I dissent.

Appellant's petition for a rehearing was denied June 9, 2010. Werdegar, J., was of the opinion that the petition should be granted.