Filed 5/28/15  P. v. Ponce CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARLOS ESPARZA PONCE,<br><br>    Defendant and Appellant. | B250042<br><br>(Los Angeles County<br>Super. Ct. No. NA088447) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James B. Pierce, Judge.  Affirmed.

Richard C. Neuhoff, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Carlos Esparza Ponce contends that the trial court failed to recognize and properly exercise its discretion when it denied his motion requesting the appointment of a particular attorney. He further contends that the court's error violated federal and state guarantees of equal protection and therefore requires reversal of his murder conviction. For the reasons explained below, we agree with defendant on the first contention but not the second. Because we find the error to be harmless, we affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL HISTORY

*A.* *Procedural Background*

On December 19, 2011, the District Attorney for the County of Los Angeles ("the People") filed an information charging defendant with the 2008 murder of Richard Vera (Pen. Code § 187, subd. (a)).[1] The People alleged the murder was committed for the benefit of a criminal street gang (§ 186.22, subds. (b)(1)(C) & (b)(4)) and involved the personal and intentional use and discharge of a firearm by a principal (§ 12022.53, subds. (b), (c), (d) & (e)(1)). The People also alleged defendant had one prior strike conviction (§§ 667, subds. (a), (b)-(i), 1170.12, subds. (a)-(d)) and two prior prison terms within the meaning of section 667, subdivision (b).

Deputy public defender Gregory Cummings represented defendant at his preliminary hearing and arraignment. Defendant sought to terminate Cummings and proceed in propia persona on January 26, 2012. The court advised defendant against doing so and continued the proceedings to give him time to review the waiver form and reconsider his position. When defendant returned to court four days later, he reaffirmed his desire to terminate Cummings and proceed in pro. per. The court accepted defendant's waiver of his right to counsel and granted him pro. per. status effective January 30, 2012. Defendant represented himself for the next few months.

On May 11, 2012, defendant filed a motion seeking appointment of private attorney Edmont T. Barrett. In a declaration in support of his motion, defendant averred

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2

that Barrett represented him in a different criminal case and in the course of that representation had listened to tape recordings pertinent to the instant case. Defendant further claimed he had an actual conflict with the public defender, and accused his former counsel –deputy public defender Cummings – of "unprofessional[]" behavior, namely attempting to deliver discovery to defendant by entrusting it to a sheriff's department bus driver. Defendant also submitted a memorandum of points and authorities consisting entirely of a lengthy excerpt from *Harris v. Superior Court of Alameda County* (1977) 19 Cal.3d 786 (*Harris*), in which the Supreme Court held that a trial court erred in declining to appoint specific counsel requested by indigent defendants affiliated with the Symbionese Liberation Army.

At the hearing on defendant's motion, the court and defendant engaged in the following colloquy:

"Defendant Ponce: The Harris motion would be for appointment of a specific attorney, a specific attorney because there's a conflict.

"The Court: You need an attorney appointed?

"Defendant Ponce: Yeah. Appointment for counsel.

"The Court: I'm not going to let you pick him.

"Defendant Ponce: Well, see, because - -

"The Court: Who did you have before? What office was it, APD or PD?

"Defendant Ponce: It was a public defender.

"The Court: Okay. We have to go back to that office. I can not - - I don't have the discretion to appoint a specific attorney.

"Defendant Ponce: I understand that, your honor. But I do have a conflict of interest with the public defender's office, so I can not be represented by a public defender.

"The Court: That's for them to decide.

"Defendant Ponce: So how we go - -

"The Court: I have to refer it to the public defender's office. If they declare a conflict, then I have to appoint the alternate public defender's office. I don't appoint

3

specific people of that office.  I appoint the office.  It's up to them to decide who in the office is going to represent you.  If the APD declares a conflict, then it goes to what we call a panel of attorneys called ICDA, independent counsel.

"Defendant Ponce:  I understand that.

"The Court:  But that's the third choice. I still have - - the first refusal is to the public defender's office, and they'll decide if there's a conflict or not.  There may be a conflict.

"Defendant Ponce:  There is.

"[¶] . . . [¶]

"The Court:  I don't fully understand your declaration in regards to Mr. Edmund [*sic*] Barrett.  What are you saying about him?

"Defendant Ponce:  He was my previous attorney on my other case in Department M with Mr. - - Judge Ferrari.

"The Court:  Yes.

"Defendant Ponce:  Okay. Well, what I'm saying is I would like him appointed.  I was requesting if I could get him appointed.

"The Court:  I see.  Well, see, again, I cannot pick and choose.

"Defendant Ponce:  The recordings on this case were used on the other case, so he's familiar with the evidence, and there is a conflict of interest with the - - see, the whole conflict was on my other case.  The alleged victim had been represented on - - I guess on a previous conviction in Long Beach court by the public defenders.  So the public defender's office on that case declared a conflict of interest based on that.

"The Court:  They did?

"Defendant Ponce:  Yes.

"The Court: On the other case.  That's where Mr. Barrett was appointed?

"Defendant Ponce:  Yes.

"The Court:  But you understand that, if it gets to the ICDA, that is after the public defender's office and after the APD's office, alternate public defender's office, declare conflicts, and they may, then it's up to the panel of attorneys to appoint somebody. They

4

don't go down the list and say, oh, Mr. Barrett represented him in the past, so let's appoint him. They don't do it that way. It just goes in order on the ICDA panel. But we haven't gotten to that yet. I still have to make the referral to the public defender's office. They will check for conflicts in regards to this representing the victim in the past and so forth. If they declare a conflict, then I will appoint the APD. That's the order in which the court goes. [¶] I'm not going to go to Mr. Barrett directly. You might get to the ICDA list, but the chances of getting Mr. Barrett are long and far. I can't control that list. And just because he heard tapes that may be used in this case has nothing to do - - that doesn't move him up the list. That's all I'm saying to you.

"Defendant Ponce: I understand that. That's the whole point of the Harris motion.

"The Court: I have to go through the PD's office and the APD's office.

"[¶] . . . [¶]

"Defendant Ponce: I'm saying - - all right. I was under the impression it was up to your decision. It was at your discretion.

"The Court: No. It is not.

"Defendant Ponce: Okay. Well, let's go ahead and do that then. I'll go ahead and relinquish my pro per status and do that."

The court withdrew defendant's pro. per. status and appointed the public defender to represent him. The public defender subsequently declared a conflict, as did the alternate public defender. The court appointed Leonard Garber, an attorney from the ICDA panel, to represent defendant. Defendant did not object to the appointment at any point, and Garber represented defendant from June 28, 2012 forward, through and including defendant's May 2013 jury trial and July 2013 sentencing.

The jury returned a guilty verdict on the murder count and findings of true on the gang and weapons allegations. Defendant admitted his priors and was sentenced to a total of 81 years to life, with 836 days of precustody credit. He timely appealed.

5

Defendant's sole contention on appeal is that the trial court's ruling that it had no discretion to appoint attorney Barrett "was wrong, and its error requires reversal of the judgment here." We agree with the former point but not the latter.

"A criminal defendant's right to counsel is guaranteed by both the federal Constitution's Sixth Amendment (applicable to the states through the Fourteenth Amendment), and by the California Constitution article I, section 15." (*People v. Sapp* (2003) 31 Cal.4th 240, 256.) The Sixth Amendment gives "a defendant who does not require appointed counsel [the right] to choose who will represent him." (*United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 144.) However, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." (*Id.* at p. 151.) The same is true under the California Constitution, which "gives a criminal defendant the right to an attorney who must competently represent the defendant" but "does not give an indigent the right to *select* a court-appointed attorney." (*People v. Jones* (2004) 33 Cal.4th 234, 244; see also *People v. Noriega* (2010) 48 Cal.4th 517, 523 (*Noriega*).) In addition, the trial court has a statutory mandate to inform defendants of their right to counsel and "assign" counsel to represent defendants who desire but cannot afford counsel. (§ 987, subd. (a); see *People v. Crayton* (2002) 28 Cal.4th 346, 361.)

Section 987.2 sets forth the process by which the court is to assign or appoint counsel for indigent defendants. Subdivision (e), which the parties agree is the pertinent provision here, provides: "In a county of the first, second, or third class, the court shall first utilize the services of the public defender to provide criminal defense services for indigent defendants. In the event that the public defender is unavailable and the county has created a second public defender and contracted with one or more responsible attorneys or with a panel of attorneys to provide criminal defense services for indigent defendants, and if the quality of representation provided by the second public defender is comparable to the quality of representation provided by the public defender, the court shall next utilize the services of the second public defender and then the services of the county-contracted attorneys prior to assigning any other private counsel. Nothing in this

6

subdivision shall be construed to require the appointment of counsel in any case in which the counsel has a conflict of interest.  In the interest of justice, a court may depart from that portion of the procedure requiring appointment of the second public defender or a county-contracted attorney after making a finding of good cause and stating the reasons therefor on the record."[2]

Although use of the words "shall" and "may" is not dispositive (*People v. Allen* (2007) 42 Cal.4th 91, 101-102), "[u]nder 'well-settled principle[s] of statutory construction,' we 'ordinarily' construe the word 'may' as permissive and the word 'shall' as mandatory, 'particularly' when a single statute uses both terms" (*Tarrant Bell Property, LLC v. Superior Court of Alameda County* (2011) 51 Cal.4th 538, 542).  Thus, courts have interpreted section 987.2, subdivision (e) to require courts to "'first utilize the services of the public defender in providing criminal defense services for indigent defendants, if the public defender is available to try the matter.'  (*Williams v. Superior Court* (1996) 46 Cal.App.4th 320, 329.)" (*Joshua P. v. Superior Court of Los Angeles County* (2014) 226 Cal.App.4th 957, 964.)  Defendant suggests in his opening brief that "[t]here is a question as to whether the court was correct when it held that it was required to appoint the Public Defender in the first place, before considering appointing anyone else," but does not press the issue because "the Public Defender declared a conflict and was not appointed to represent appellant."

Instead, defendant argues "that the trial court was wrong when it informed Mr. Ponce (1) that it had to appoint the Alternate Public Defender if the Public Defender declared a conflict . . .  and (2) that it had no discretion to appoint Mr. Barrett out of sequential order from the ICDA panel . . . ."  The plain language of section 978.2, subdivision (e) supports this contention. The final sentence of the statute expressly vests in the court the discretion to "depart from that portion of the procedure requiring appointment of the second public defender or a county-contracted attorney after making a

---

[2]     Los Angeles County is a "count[y] of the first class." (Gov. Code §§ 28020-28022; § 987.2, subd. (j).)

7

finding of good cause and stating the reasons therefor on the record." More importantly, the California Supreme Court has long recognized that "[t]he appointment of counsel to represent an indigent rests, as always, in the sound discretion of the trial court." (*Drumgo v. Superior Court of Marin* (1973) 8 Cal.3d 930, 934-935; see also *Harris*, *supra*, 19 Cal.3d 786 at p. 795; *People v. Chavez* (1980) 26 Cal.3d 334, 345-346 (*Chavez*); *People v. Cole* (2004) 33 Cal.4th 1158, 1185-1186; *People v. Alexander* (2010) 49 Cal.4th 846, 871-872 (*Alexander*).) The court's adherence to a rigid appointment process, simply because "[t]hat's the order in which the court goes," was not an appropriate exercise of this discretion. "[I]n this context, as in other contexts, the boundaries of 'judicial discretion' cannot be embraced by an 'absolute rule' but must be judged by the circumstances of the particular case." (*Chavez*, *supra*, 26 Cal.3d at p. 345.) "The exercise of the court's discretion in the appointment of counsel should not have been restricted by an inflexible rule, but rather should have rested upon consideration of the particular facts and interests involved in the case before it." (*Id.* at p. 346.)

The People suggest that the court was not permitted to deviate from the standard appointment procedure because defendant failed to demonstrate any "just cause" warranting such a departure. In other words, they suggest that the court implicitly declined to "mak[e] a finding of good cause" and therefore could not "depart from that portion of the procedure requiring appointment of the second public defender or a county-contracted attorney." (§ 987.2, subd. (e).) This contention might have more traction if the court had considered the substance of defendant's request before telling him, "I don't have the discretion to appoint a specific attorney," and, somewhat contradictorily, "I'm not going to let you pick him."[3] It is clear from the transcript that the court's ruling was predicated not upon an evaluation of "good cause" but rather upon its belief that it lacked both the discretion and inclination to deviate from the standard

---

[3]     The record indicates that defendant, who was pro. per. at the time, brought a hard copy of his handwritten motion to the hearing. The court paused the proceedings to read the motion and give defendant an opportunity to file it with the court. We emphasize, however, that the court did not take this step until it had already told defendant several times and in no uncertain terms that it would not be appointing Barrett.

order. On the record before us, we cannot conclude that the court made a reasoned assessment of "the circumstances of the particular case." (*Chavez*, *supra*, 26 Cal.3d at p. 345.)

At the same time, we are not persuaded by defendant's contention that "there clearly was good cause for the court to appoint Mr. Barrett." "In deciding whether a particular attorney should be appointed to represent an indigent defendant, a trial court considers subjective factors such as a defendant's preference for, and trust and confidence in, that attorney, as well as objective factors such as the attorney's special familiarity with the case and any efficiencies of time and expense the attorney's appointment would create." (*Alexander*, *supra*, 49 Cal.4th at p. 871.) Defendant claims that his "written and oral requests to appoint Barrett satisfied the subjective part of the analysis. And, more importantly, the objective part was more than amply fulfilled by the fact that Barrett, by virtue of his representation of appellant at the prior case, was familiar with the prosecution's key evidence in the present proceeding, namely, the recordings of the in-jail conversations." We disagree.

Defendant's subjective expression of a preference for a particular attorney "is not a determinative factor *requiring* the appointment of that attorney – even in combination with other relevant factors such as the subject attorney's competence and availability." (*Harris*, *supra*, 19 Cal.3d at p. 796.) Even if we were to assume that defendant's request for Barrett constituted a sufficiently weighty subjective consideration, a point about which we are skeptical in light of the considerable "depth of the relationship between the petitioners and their requested counsel in *Harris*" (*People v. Cole*, *supra*, 33 Cal.4th at p. 1187), the strength of the objective considerations in this case is minimal. Barrett's limited familiarity with some of the evidence – in the context of a different, unrelated case involving criminal threats, burglary, and assault with a deadly weapon – is not compelling. *People v. Cole* is instructive in this regard. There, the Supreme Court found no abuse of discretion in the court's denial of requested counsel where the preferred attorney had represented the defendant for 11 months in the same case and had traveled across the country to interview and develop a rapport with potential witnesses in New

9

Hampshire and Massachusetts. (*People v. Cole*, *supra*, 33 Cal.4th at pp. 1179, 1187.) The investment of that attorney's time, and his concomitant facility with the evidence in the case, substantially exceeds Barrett's alleged familiarity here.

The same is true of the attorneys in *Harris*, a case on which defendant principally relies. In *Harris*, which involved very "specific and unusual facts" (*People v. Lancaster* (2007) 41 Cal.4th 50, 70, fn. 5), defendants faced charges of aggravated kidnapping, robbery, assault with a deadly weapon, and false imprisonment stemming from their involvement with the Symbionese Liberation Army (*Harris*, *supra*, 19 Cal.3d at p. 789). The attorneys as to whom defendants sought appointment shared certain "political and social perceptions" with their clients (*Id.* at p. 793), represented them in related criminal proceedings also concerning their alleged activities as members of the Symbionese Liberation Army, and were endorsed by the attorneys ultimately appointed. (*Id*. at pp. 789-791.) The Supreme Court concluded that the trial court abused its discretion in not appointing requested counsel. Specifically, the trial court failed to consider that the prior representation "not only established a close working relationship between [defendants] and [the requested attorneys] but also served to provide those attorneys with an extensive background in various factual and legal matters which may well become relevant in the instant proceeding – a background which any other attorney appointed to the case would necessarily be called upon to acquire." (*Id.* at p. 798.) It would require "expenditure of considerable energy and time . . . to bring their level of familiarity with those facts and issues to a point comparable with that already reached by [requested counsel]." (*Id.* at p. 799.) Here, in contrast, defendant stated only that Barrett "ha[d] listened to the tape recordings in evidence in [the previous] case," and therefore was "familiar with the evidence" in the instant case. Defendant did not assert that the tapes were complex, extensive, or otherwise so critical that Barrett's knowledge of them was significant. In short, the objective considerations defendant presented the court were not "of the consequence" of those in *Harris*. (*Harris*, *supra*, 19 Cal.3d at p. 799.)

Nonetheless, because the court failed to exercise its discretion to make such an assessment itself, "we must determine whether that error warrants reversal of defendant's

10

conviction." (*Chavez*, 26 Cal.3d at p. 348.) Defendant acknowledges that "[t]here are several [Supreme Court] cases that appear to hold that when a trial court errs by failing to appoint counsel requested by a defendant, the error does not require reversal per se but is subject to harmless error inquiry." That line of cases includes *Chavez*, *supra*, 26 Cal.3d at pp. 348-349, *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [characterizing *Chavez* as holding that "error in refusing representation by attorney of choice . . . compel[s] reversal after judgment only upon a showing of prejudice"], and *Noriega*, *supra*, 48 Cal.4th at p. 525 [*Chavez* "stated that the error did not require automatic reversal of the defendant's conviction"]. We find these cases persuasive and controlling.[4] We accordingly consider whether defendant has demonstrated a reasonable probability that the trial court's erroneous denial of his motion for the appointment of attorney Barrett altered the outcome of the trial. (*Noriega*, *supra*, 48 Cal.4th 517, at p. 525 [citing *People v. Watson* (1956) 46 Cal.2d 818].)

The People correctly observe that defendant has not attempted to demonstrate prejudice resulting from the court's refusal to appoint Barrett. On that basis alone, we are constrained to conclude that defendant is not entitled to reversal of his conviction (see *Noriega*, *supra*, 48 Cal.4th at p. 525; cf. *id.* at p. 522-523 ["Because defendant here has not even attempted to show that the performance by his replacement counsel, Morreale, was in any way deficient, he has not established a violation of his federal constitutional

---

[4]     Defendant asserts that "the State Supreme Court has also indicated the question is unresolved." He supports this assertion with citation to *Alexander*, *supra*, 49 Cal.4th at p. 873, where the Supreme Court stated, "Because we conclude there was no abuse of discretion, we do not consider whether defendant was prejudiced by Kopple's absence from the case or whether any error in removing her would have been reversible without showing prejudice." We are not convinced this dictum demonstrates that the question is unresolved. The Supreme Court was discussing the *removal* of a defendant's desired attorney, not her appointment, and in any event has held that demonstration of prejudice is required even in that situation, which "poses a greater potential threat to the defendant's constitutional right to counsel than does the refusal to *appoint* an attorney requested by the defendant. . . ." (*People v. Jones*, *supra*, 33 Cal.4th at p. 244.) (See *Noriega*, *supra*, 48 Cal.4th at pp. 520, 525.)

11

right to the effective assistance of counsel."]); "it is not enough for an appellant to identify an error in the proceedings in the trial court without *affirmatively* establishing 'how the error caused a miscarriage of justice.' [Citations.]" (*People v. Singh* (2015) 234 Cal.App.4th 1319, 1330-1331.) Even if defendant had attempted to demonstrate prejudice, however, we are not convinced he would be able to do so in light of the overwhelming evidence demonstrating his guilt beyond a reasonable doubt.[5]

We also reject defendant's contentions that reversal per se is required on grounds not yet considered by the Supreme Court. First, he contends that the failure to exercise discretion "has often been ruled per se reversible" and should be in this context. We disagree. Contrary to defendant's contention, *Chavez*, which we find closely analogous to the instant case, did "involve[ ] a trial court's failure or refusal to exercise discretion or a court's making a decision on the basis of a misunderstanding of the law." In *Chavez*, as here, the trial court appointed an attorney other than that requested by defendant without considering the reasons for defendant's request. (See *Chavez*, *supra*, 26 Cal.3d at p. 341.) The Supreme Court concluded, as we do here, that the trial court "improperly

---

[5]     The People's case against defendant included the following: (1) police interviews with defendant's fellow gang member in which he described defendant as a high-ranking "shot caller" for the Westside Longos and reported twice overhearing defendant and a lower-ranked accomplice discussing their plans to shoot Richard Vera for "slipping," or being under the influence while he was supposed to be "on point" for the gang; (2) recorded interview statements from that same witness indicating that the accomplice warned him to stay away from the area on the day of the shooting and placing both defendant and the accomplice at the scene of the crime approximately 40-50 minutes before the shooting; (3) forensic evidence linking the accomplice to the shooting and confirming the eyewitness's testimony about items he saw the accomplice carrying on the day of the murder; (4) jailhouse recordings of defendant describing his plans to "dome" Vera and boasting about the shooting, including a graphic description in which defendant compared the appearance of Vera, who was shot in the head, to that of a watermelon splitting open; (5) additional jailhouse recordings in which defendant stated that the accomplice, who did the actual shooting, had been "going crazy" and "chasing ghosts" since that day; (6) evidence that the accomplice committed suicide in 2010; and (7) testimony from a gang expert explaining why the murder of a fellow Westside Longo would have benefitted the gang. The jury deliberated for only 30 minutes before returning its verdict.

adhered to a fixed policy of appointing its 'own' counsel in every case." (*Id.* at p. 346.) The court nonetheless considered whether the error was prejudicial and concluded it was not. (*Id.* at p. 348.) We are obligated to undertake the same analysis and reach the same conclusion – for largely the same reasons as *Chavez*. For here, as there, "neither defendant nor . . . his counsel ever suggested during pretrial proceedings, at trial, or in the course of the posttrial sentencing hearing, that the defense was hampered in any way by the failure to [ ] appoint [requested] counsel." (*Ibid.*) Moreover, defendant never contended that his appointed attorney "was anything but fully competent, or that counsel was given inadequate opportunity to prepare the defense: from all indications, defendant was fully satisfied with his representation." (*Ibid.*)

Defendant's second argument for per se reversal is equally unavailing. Defendant argues that treating defendants who have retained counsel differently from indigent defendants "who have shown that the court should have appointed counsel of their choice" is a violation of equal protection of the laws. This contention is flawed in two fundamental ways. First, the United States Supreme Court explicitly has held "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." (*United States v. Gonzalez-Lopez, supra*, 548 U.S. at p. 151.) Second, even if defendant were able to overcome that hurdle, he has not persuaded us that the court should have appointed counsel of his choice. Unlike *Harris*, in which the Supreme Court concluded that the trial court properly could have exercised its discretion to appoint requested counsel and abused its discretion in declining to do so (*Harris, supra*, 19 Cal.3d at pp. 796, fn. 9, 799), the facts supporting Barrett's appointment were far from compelling. As discussed above, the objective considerations such as "the attorney's special familiarity with the case and any efficiencies of time and expense the attorney's appointment would create" (*Alexander, supra*, 49 Cal.4th at p. 871), are weak at best. Nothing in the record compelled the appointment of attorney Barrett.

13

**DISPOSITION**

The judgment of the trial court is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

14